**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | |
|---|---|
| *In Re: PharMerica Data Breach Litigation* | Master File No. 3:23-cv-00297-RGJ |
| This Document Relates To: All Actions | |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF**
**CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT**

J. Gerard Stranch, IV
(Admitted *Pro Hac Vice*)
**STRANCH, JENNINGS & GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Tel.: 615-254-8801
Fax: 615-255-5419
gstranch@stranchlaw.com

Gary M. Klinger
(Admitted *Pro Hac Vice*)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
T: (865) 247-0047
gklinger@milberg.com

Lynn A. Toops
**COHENMALAD, LLP**
One Indiana Square Suite 1400 Indianapolis, IN 46204
(317) 636-6481
ltoops@cohenmalad.com

E. Michelle Drake (Admitted *Pro Hac Vice*)
**BERGER MONTAGUE, PC**
43 SE Main Street, Suite 505
Minneapolis, Minnesota 55414
Tel.: 612-594-5999
Fax: 612-584-4470
emdrake@bm.net

Augustus Herbert
**GRAY ICE HIGDON, PLLC**
3939 Shelbyville Road, Suite 201
Louisville, Kentucky 40207
Direct: 502.625.2732
Fax: 502.561.0442
aherbert@grayice.com

*Counsel for Proposed Settlement Class*

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................. 1

II.   PROCEDURAL AND FACTUAL HISTORY ....................................... 1

III.  OVERVIEW OF THE PROPOSED SETTLEMENT .......................... 3

    A.    The Settlement Class. ............................................................... 3

    B.    The Settlement Benefits. ........................................................... 4

    C.    The Notice Plan and Claims Administrator ............................... 4

    D.    Proposed Attorneys' Fees and Litigation Expenses and Service Awards .. 7

    E.    The Release and Dismissal of the Action with Prejudice ......... 7

IV.   ARGUMENT ........................................................................................ 8

    A.    FED. R. CIV. P. 23(e) and Sixth Circuit Standards for Preliminary Approval .......................................................................... 8

    B.    The Settlement Is Fair, Reasonable, and Adequate Under the Rule 23 and Sixth Circuit Factors ............................................................... 10

        1.    The Likelihood of Success on the Merits ..................................... 10

        2.    The Class Representatives and Class Counsel have Adequately Represented the Class ............................... 11

        3.    The Proposed Settlement Is the Product of Arms-Length Negotiations Among Experienced Counsel ................. 11

        4.    The Relief Under the Proposed Settlement Is Adequate ............. 12

        5.    The Settlement Treats Class Members Equitably Relative to Each Other ..................................................................... 13

        6.    The Risk of Fraud or Collusion ..................................................... 13

        7.    The Complexity, Expense and Likely Duration of Litigation ..... 14

        8.    The Amount of Discovery Engaged in by the Parties ................. 14

        9.    The Opinions of Class Counsel and Class Representatives ........ 15

        10.   The Reaction of Absent Class Members ...................................... 15

11. The Public Interest ...................................................................... 15

C. The Court Will Be Able to Certify the Class for Purposes of Settlement ................................................................................................. 16

1. There are Common Questions of Law and Fact......................... 17

2. Plaintiffs' Claims Are Typical of the Class ............................... 17

3. Plaintiffs and Class Counsel Will Fairly and Adequately Protect the Interests of the Class ................................................ 17

4. The Requirements of Rule 23(b)(3) Are Met............................. 18

a. The Class Counsel are adequate……………………………19

b. The Named Plaintiffs are adequate…………………………19

5. The Requirements of Rule 23(b)(3) Are Met…………………..20
a. Common Issues of Fact and Law Predominate for Settlement Purposes……………………………………..20
b. A Class Action is a Superior Means of Resolving This Controversy…………………………………………….21

D. The Proposed Class Notice and Plan for Dissemination Are Reasonable and Should Be Approved...................................................... 22

VII. CONCLUSION ................................................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997) ................................................................................................. 16, 20, 22

*Beattie v. CenturyTel, Inc.,*
  511 F.3d 554 (6th Cir. 2007) ............................................................................................. 18, 20

*Bert v. AK Steel Corp.,*
  No. 02-cv-467,  2008 WL 4693747 (S.D. Ohio Oct. 23, 2008) ............................................ 11

*Bittinger v. Tecumseh Prods. Co.,*
  123 F.3d 877 (6th Cir. 1997) ................................................................................................. 18

*Calloway v. Caraco Pharm. Labs., Ltd.,*
  287 F.R.D. 402 (E.D. Mich. 2012) ........................................................................................ 21

*Cheryl Gaston v. FabFitFun, Inc.,*
  No. 2:20-cv-09534-RGK-E, 2021 WL 6496734 (C.D. Cal. Dec. 9, 2021) ........................... 10

*Curry v. SBC Commc'ns, Inc.,*
  250 F.R.D 301 (E.D. Mich. 2008) ......................................................................................... 17

*Daffin v. Ford Motor Co.,*
  458 F.3d 549 (6th Cir. 2006) ................................................................................................. 17

*Davis v. Omnicare, Inc.,*
  No. 5:18-cv-142-REW, 2021 WL 4188053 (E.D. Ky. Sept. 14, 2021) .................................. 19

*Ditsworth v. P & Z Carolina Pizza,*
  No. 1:20-cv-00084-GNS, 2021 WL 2941985 (W.D. Ky. July 13, 2021)................10, 14, 16

*Doe v. Ohio,*
  No. 2:91-cv-00464, 2020 WL 728276 (S.D. Ohio Feb. 12, 2020) ......................................... 9

*Ebarle v. Lifelock, Inc.,*
  No. 15-cv-00258-HSG, 2016 WL 234364 (N.D. Cal. Jan. 20, 2016) .................................... 12

*Garner Properties & Mgmt., LLC v. City of Inkster,*
  333 F.R.D. 614 (E.D. Mich. 2020) .......................................................................................... 9

*Gordon v. Chipotle Mexican Grill, Inc.,*
  No. 17-cv-01415-CMA-SKC, 2019 WL 6972701 (D. Colo. Dec. 16, 2019)........................ 11

*Green v. Platinum Restaurants Mid-Am. LLC,*
  No. 3:14-cv-439, 2022 WL 1240432 (W.D. Ky. Apr. 27, 2022) ................................. passim

*Hainey v. Parrott*,
617 F. Supp. 2d 668 (S.D. Ohio 2007) .............................................................. 14

*In re Am. Med. Sys., Inc.*,
75 F.3d 1069 (6th Cir. 1996)……………………………………………………………18

*In re Cardizem CD Antitrust Litig.*,
218 F.R.D. 508 (E.D. Mich. 2003) .................................................................... 16

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
No. 3:08-MD-01998, 2009 WL 5184352 (W.D. Ky. Dec. 22, 2009)………….17, 18, 19, 21

*In re Fam. Sols. of Ohio, Inc.*,
No. 21-cv-0303, 2022 WL 13915151 (6th Cir. June 17, 2022)........................... 21

*In re Haier Freezer Consumer Litig.*,
No. 5:11-cv-02911-EJD, 2013 WL 2237890 (N.D. Cal. May 21, 2013) ........... 12

*In re Ins. Broker Antitrust Litig.*,
297 F.R.D. 136 (D.N.J. 2013).......................................................................... 23

*In re Inter-Op Hip Prosthesis Liab. Litig.*,
204 F.R.D. 330 (N.D. Ohio 2001) ...................................................................... 8

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019) ........................................................................ 16

*In re Telectronics Pacing Sys., Inc.*,
137 F. Supp. 2d 985 (S.D. Ohio 2001) .............................................................. 14

*In re Wawa, Inc. Data Sec. Litig.*,
No. 19-cv-6019, 2021 WL 3276148 (E.D. Pa. July 30, 2021) ..................... 14, 21

*In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*,
722 F.3d 838 (6th Cir. 2013) ........................................................................... 16

*Lonardo v. Travelers Indem. Co.*,
706 F. Supp. 2d 766 (N.D. Ohio 2010)............................................................. 16

*Lott v. Louisville Metro Gov't*,
No. 3:19-cv-271-RGJ, 2023 WL 2562407 (W.D. Ky. Mar. 17, 2023).................. 8

*Merenda v. VHS of Michigan, Inc.*,
296 F.R.D. 528 (E.D. Mich. 2013) .................................................................... 20

*Moeller v. Wk. Publications, Inc.*,
649 F.Supp.3d 530 (E.D. Mich. 2023) ............................................................... 8

*Officers for Just. v. Civ. Serv. Comm'n of City & Cty. of S.F.*,
  688 F.2d 615 (9th Cir. 1982) ..............................................................................10

*Peck v. Air Evac. EMS, Inc.*,
  No. 18-cv-615-DCR, 2019 WL 3219150 (E.D. Ky. Jul. 17, 2019).............................. *passim*

*Pelzer v. Vassalle*,
  655 F. App'x 352 (6th Cir. 2016)..........................................................................9

*Powers v. Hamilton Cty. Pub. Def. Comm'n*,
  501 F.3d 592 (6th Cir. 2007) ..............................................................................21

*Sandusky Wellness Center, LLC v. ASD Specialty Healthcare, Inc.*,
  863 F.3d 460 (6th Cir. 2017) ..............................................................................20

*Senter v. Gen. Motors Corp.*,
  532 F.2d 511 (6th Cir. 1976) ..............................................................................19

*Spine & Sports Chiropractic, Inc. v. ZirMed, Inc.*,
  No. 13-cv-00489, 2015 WL 1976398 (W.D. Ky. May 4, 2015) ...........................................8

*Sprague v. General Motors Corp.*,
  133 F.3d 388 (6th Cir. 1998) ..............................................................................18

*Sullivan v. DB Invs., Inc.*,
  667 F.3d 273 (3d Cir. 2011)............................................................................ 13, 21

*Thacker v. Chesapeake Appalachia, L.L.C.*,
  259 F.R.D. 262 (E.D. Ky. 2009) ...................................................................... 14, 19

*Thompson v. Seagle Pizza, Inc.*,
  No. 20-cv-16-DJH-RSE, 2022 WL 1431084 (W.D. Ky. May 5, 2022) .................................8

*UAW v. Ford Motor Co.*,
  No. 07-cv-14845, 2008 WL 4104329 (E.D. Mich. Aug. 29, 2008)................................15, 22

*Walmart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)........................................................................................17

*Walsh v. Great Atl. & Pac. Tea Co., Inc.*,
  726 F.2d 956 (3d Cir. 1983)...............................................................................13

*Ware v. CKF Enterprises, Inc.*,
  No. 19-cv-183-DCR, 2020 WL 2441415 (E.D. Ky. May 12, 2020) ........................... *passim*

*Wilson v. Anthem Health Plans of Kentucky, Inc.,*
    No. 14-cv-743, 2019 WL 6898662 (W.D. Ky. Dec. 18, 2019) .................................... passim

*Wright v. Premier Courier, Inc.*,
    No. 16-cv-420, 2018 WL 3966253 (S.D. Ohio Aug. 17, 2018) ........................................... 14

**Constitutional Provisions & Statutes**

28 U.S.C. § 1715 ...................................................................................................................... 6

**Rules & Regulations**

Fed. R. Civ. P. 23(a) ............................................................................................. *passim*

Fed. R. Civ. P. 23(b) ............................................................................................. *passim*

Fed. R. Civ. P. 23(e) ............................................................................................. *passim*

Fed. R. Civ. P.
23(g)………………………………………………………………………19

## I.    INTRODUCTION

Plaintiffs David Hibbard, Frank Raney, James Young, Holly Williams, Micaela Molina, and Charley Luther ("Plaintiffs") respectfully request that the Court preliminarily approve a nationwide class action Settlement with Defendant PharMerica Corporation ("PharMerica").[1] The proposed Settlement, which is an excellent result for the Class, includes both a $5,275,000.00 non-reversionary common fund and a separate claims-made benefit that will provide significant benefits to the class members.  The Settlement was reached after PharMerica's motion to dismiss the operative complaint was fully briefed and ruled upon by the Court, extensive discovery took place, and following an extensive mediation process with respected data breach mediator Steven R. Jaffe, which culminated in a mediator's proposal that the parties ultimately accepted.

Given the significant litigation risks faced by the parties and the efficiency by which the Settlement was reached, it represents an outstanding recovery for Plaintiffs and class members. As set forth below, the proposed Settlement should be approved because it meets the applicable Sixth Circuit criteria for being fair, reasonable, and adequate. Plaintiffs also respectfully request that the Court certify the proposed Settlement Class for settlement purposes only; authorize dissemination of the proposed Notice to the Settlement Class; and schedule a Final Approval Hearing.

PharMerica does not oppose the relief requested in this motion.

## II.    PROCEDURAL AND FACTUAL HISTORY

PharMerica is a nationwide provider of pharmacy services. It operates 180 local and 70,000 backup pharmacies and services healthcare partners and patients in over 3,100 long-term care, senior living, IDD/behavioral health, home infusion, specialty, pharmacy, and hospital management programs.  Plaintiffs allege that in March of 2023 a cybercriminal ransomware gang

---

[1] All capitalized terms herein not separately defined shall have the same meaning ascribed to them in the Settlement Agreement.

targeted PharMerica's computer network and exfiltrated 4.7 terabytes of information.

Thereafter, Plaintiffs filed their individual complaints, which were consolidated into the instant matter on July 19, 2023.

On October 16, 2023, after reviewing multiple competing motions for appointment, this Court entered an order appointing J. Gerard Stranch, IV of Stranch, Jennings, & Garvey, PLLC as Interim Lead Counsel, E. Michelle Drake of Berger Montague, P.C., Gary M. Klinger of Milberg Coleman Phillips Grossman, PLLC, and Lynn A. Toops of CohenMalad, LLP, as Executive Committee Co-Members, and August Herbert of Gary Ice Higdon as Liaison Counsel.

On November 30, 2023, Plaintiffs filed their Consolidated Class Action Complaint. Subsequently, on January 12, 2024, Plaintiffs filed their First Amended Consolidated Class Action Complaint.

Defendant filed a Motion to Dismiss Plaintiffs' First Amended Consolidated Class Action Complaint on February 12, 2024. The Motion was fully briefed and argued and was ultimately granted as to Plaintiffs claims of breach of third-party beneficiary contract, breach of fiduciary duty, violations of the Kentucky Consumer Protection Act, violations of the Michigan Identity Theft Protection Act, various claims under California's Unfair Competition Law, and violations of the California Consumer Privacy Act and the California Consumer Records Act, and denied as to Plaintiffs' claims of negligence, breach of implied contract, invasion of privacy, unjust enrichment, and violations of the California Confidentiality of Medical Information Act.

Shortly after the Court issued its decision on the Motion to Dismiss, the Parties began to discuss the possibility of resolution through settlement.

In furtherance of those discussions, the Parties exchanged informal discovery regarding the Data Incident, including details as to how the incident occurred, who was involved, the specific

data elements impacted, liability, and damages.

Then, on August 1, 2025, the Parties engaged in formal mediation before Steven R. Jaffe, of Upchurch Watson White & Max, a mediator experienced in handling data breach class actions. The mediation was successful.

Over the next several weeks, the Parties negotiated the contours of the Settlement and worked closely with the proposed Settlement Administrator to create the Notice Program and Notices, and to formulate the Claims Process and draft the Claim Form.

To avoid any conflict with the class, the parties did not negotiate or discuss any terms affecting attorney fees and service awards before negotiating the agreement's core terms, including the relief it would provide the class and how the parties would distribute it. Indeed, the parties agreed Plaintiffs would need to petition the Court before receiving attorney fees and service awards and did not condition a settlement on Plaintiffs receiving any specified amounts. These efforts paid off, resulting in the settlement Plaintiffs describe below.

## III.    OVERVIEW OF THE PROPOSED SETTLEMENT

### A.    The Settlement Class.

Under the terms of the Settlement Agreement, the Settlement Class is defined as "all living persons in the United States who were provided notice of the Data Incident." Settlement Agreement, ¶ 59. Excluded from the Settlement Class are:

> [A]ll persons who are directors and officers of Defendant, governmental entities, anyone who validly and timely opts out of the Settlement, and the judge(s) assigned to the Action, the Judge's immediate family, and Court staff.

*Id.* Any Class Members, as defined above, will have until thirty (30) days before the initial scheduled Final Approval Hearing to opt out of the Settlement. *Id.* ¶ 46.

### B.      Settlement Benefits

The Settlement provides significant relief to participating Class Members. The Settlement creates two funds: a Settlement Fund and a Claims-Made Fund. First, Defendant shall pay $5,275,000.00 into a non-reversionary fund ("Settlement Fund"). Following the payment of: (1) all Settlement Administration Costs, (2) Defendant's past and future costs of data mining to confirm membership in the Settlement Class; (3) any Service Awards awarded to Class Representatives; and (4) attorneys' fees and costs as awarded to Class Counsel, the Settlement Fund will provide Class Members with the ability to claim a cash payment that will be increased or decreased on a *pro rata* basis. Settlement Agreement, ¶¶ 65-66, 70(b). In addition to the Settlement Fund, Defendant will pay claims for documented out-of-pocket expenses up to $10,000 per Class Member and one year of Kroll Complete Monitoring on a claims-made basis ("Claims-Made Fund"). *Id.* ¶¶ 70-71.  Kroll Complete Monitoring includes credit monitoring, dark web monitoring, pay day loan monitoring, social security scan, fraud consultation, identity theft restoration services (including victim assistance and customer support), $1,000,000 of insurance coverage for fraud and/or identity theft with no deductible, credit score reporting, and real-time inquiry alerts. *Id.* ¶ 71.  Class Members will have until fifteen (15) days before the initial scheduled Final Approval Hearing to submit a claim. *Id.* ¶ 55.

Lastly, the Settlement Agreement provides that PharMerica, has adopted, paid for, implemented, and will maintain certain "Business Practice Changes" related to information security to safeguard personal information on its systems. *Id.* ¶ 72. It is estimated that the value of these Business Practice Changes is $2,542,000.00 annually. *Id.*

### C.      Notice Plan

Under the terms of the Settlement Agreement, the Parties agreed that Kroll Settlement

Administration, LLC ("Kroll") should serve as the Settlement Administrator, subject to Court approval. Settlement Agreement, ¶ 59. Should the Court approve, Kroll will administer the Notice program under the terms identified in Sections VI through IX of the Settlement Agreement.

Within fourteen (14) days of the entry of the order granting preliminary approval, if entered, Defendant will provide Kroll with a list of Class Members.  Settlement Agreement, ¶ 79. Within thirty (30) days following entry of the Preliminary Approval Order, the Settlement Administrator shall commence the Notice Program by sending Email Notices and/or Postcard Notices, depending upon the type of information maintained by Defendant and provided in the Class List. *Id.* ¶ 80.  The Notice shall include a description of the material terms of the Settlement; how to submit a Claim Form; the Claim Form Deadline; the Opt-Out Deadline for individuals in the Settlement Class to opt-out of the Settlement Class; the Objection Deadline for Settlement Class Members to object to the Settlement and/or the Application for Attorneys' Fees, Costs, and Service Awards; the Final Approval Hearing date; and the Settlement Website address at which Settlement Class Members may access this Agreement and other related documents and information. *Id.* ¶ 81. Kroll will also establish a Settlement Website to provide Class Members with all relevant information and documents, including the Settlement Agreement, Claims and Notice Forms, and Court orders. *Id.* ¶ 82. Moreover, Kroll will perform reasonable address trace efforts for any Postcards that are returned as undeliverable. *Id.* ¶ 86.

Should any Class Member wish to opt out of the Settlement, they must postmark their request to Kroll at the address set forth in the Notice at least thirty (30) days before the initial Scheduled Final Approval Hearing. *Id.* ¶ 46. Any opt out request must be personally signed by the Settlement Class Member and contain the name, address, telephone number, and email address (if any), and include a statement indicating a request to be excluded from the Settlement Class. *Id.* ¶

83. Any individual in the Settlement Class who does not timely and validly request to opt out will be bound by the terms of the Settlement Agreement even if he or she does not submit a Valid Claim, and even if he or she has pending, or subsequently initiates, litigation, arbitration, or any other proceeding against Defendant relating to the Released Claims. *Id.*

Any Class Member seeking to object to the Settlement must mail a letter to the Clerk of the Court, Class Counsel, Defendant's Counsel, and the Settlement Administrator. *Id.* ¶ 84. To state a valid objection to the Settlement, a Settlement Class Member must set forth all of the following information in writing: (a) the objector's full name, mailing address, telephone number, and email address (if any); (b) all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel; (c) the number of times the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each listed case; (d) the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards; (e) the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the five years preceding the date of the filed objection, the caption of each case in which counsel or the firm has made such objection and a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding five years; (f) the identity of all counsel (if any) representing the objector who will appear at the Final

Approval Hearing; (g) a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any); (h) a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and (i) the objector's signature (an attorney's signature is not sufficient). *Id.* ¶ 85.

### D. Fees, Expenses, and Service Awards

Under the terms of Settlement Agreement, Defendant will not oppose Plaintiff's motion for fees and expenses. *Id.* ¶ 105. Class Counsel shall apply to the Court for an award of attorneys' fees of up to $3,481,750.00, which equates to 33% of the Settlement Fund and significantly less than one-third of the value of Cash Payment A – Documented Losses, and Credit Monitoring, made available through the Settlement. If approved, $1,740,750.00 shall be payable out of the Settlement Fund and $1,741,000.00 payable directly from the Defendant, separate and apart from other benefits made available to the Settlement Class. Class Counsel shall also be entitled to seek reimbursement out of the Settlement Fund for reasonable costs incurred.

In addition to Class Counsel's fees and expenses, the Settlement Agreement provides that Plaintiffs David Hibbard, Frank Raney, James Young, Holly Williams, Micaela Molina, and Charley Luther should be appointed as Class Representatives, subject to Court approval. *Id.* ¶ 26. Plaintiffs request that they be so appointed. As the Class Representatives, the Settlement Agreement provides that each Class Representative shall request a $3,500 Service Award for their service to the Class, which Class Counsel will request in its Motion for Fees and Incentive Award at a later date. *Id.* ¶ 104. Payment for Class Representatives' Service Awards will be distributed from the Settlement Fund. *Id.*

### E. Release

In exchange for these benefits, all Class Members who do not timely and validly opt out

fully and finally release Defendant and the other Released Parties from any and all past, present, and future claims and causes of action related to the Data Incident as fully detailed in the Section IX of the Settlement Agreement.

## IV.    ARGUMENT

### A.    FED. R. CIV. P. 23(e) and Sixth Circuit Standards for Preliminary Approval.

"Federal Rule of Civil Procedure 23(e) provides that the claims of 'a class proposed to be certified for purposes of settlement" can be settled "only with [a] court's approval.'" *Thompson v. Seagle Pizza, Inc.,* No. 3:20-cv-16, 2022 WL 1431084, at *3 (W.D. Ky. May 5, 2022) (quoting FED. R. CIV. P. 23(e)). "'Before the Court can preliminarily approve [a] class action settlement, it must preliminarily certify the class under Rule 23(a) and (b) of the Federal Rules of the Civil Procedure, appoint class counsel, and approve the class representative.'" *Ware v. CKF Enterprises, Inc.,* No. 5:19-cv-183, 2020 WL 2441415, at *7 (E.D. Ky. May 12, 2020) (quoting *Peck v. Air Evac. EMS, Inc.*, No. 5: 18-cv-615, 2019 WL 3219150, at *2 (E.D. Ky. Jul. 17, 2019)). "Approval of a class action settlement involves two-stages: (1) 'The judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing'; and (2) 'If so, the final decision on approval is made after the hearing.'" *Green v. Platinum Restaurants Mid-Am. LLC*, No. 3:14-cv-439, 2022 WL 1240432, at *2 (W.D. Ky. Apr. 27, 2022) (quoting *Ann. Manual Complex Lit.* (Fourth) § 13.14 (2019)).

"At the stage of preliminary approval, the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval." *Lott v. Louisville Metro Gov't,* No. 3:19-cv-271, 2023 WL 2562407, at *1 (W.D. Ky. Mar. 17, 2023) (quoting *Spine & Sports Chiropractic, Inc. v. ZirMed, Inc.*, No. 3:13-cv-00489, 2015 WL 1976398, at *1 (W.D. Ky. May 4, 2015)). "Courts apply a degree of scrutiny sufficient

to avoid 'rubber-stamp[ing]' a proposed settlement agreement, while still being 'mindful of the substantial judicial processes that remain to test the assumptions and representations upon which the [proposed settlement agreement] are premised.'" *Id.* (quoting *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 338 (N.D. Ohio 2001)). *See also Moeller v. Wk. Publications, Inc.*, 649 F. Supp. 3d 530, 537 (E.D. Mich. 2023) ("The question at the preliminary-approval stage is 'simply whether the settlement is fair enough' to begin the class-notice process.") (citing *Garner Properties & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 626 (E.D. Mich. 2020)).

Rule 23(e)(2) sets forth factors to assist the Court in determining whether a settlement is "fair, reasonable, and adequate":

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

*Green*, 2022 WL 1240432, at *2–3 (quoting Fed. R. Civ. P. 23(e)(2)).

In addition to the Rule 23(e)(2) considerations, the Sixth Circuit has articulated the following "traditional factors" for district courts to consider in this context:

(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Green*, 2022 WL 1240432, at *4 (quoting *Pelzerv. Vassalle*, 655 F. App'x 352, 359 (6th Cir. 2016)).

"[I]n considering whether to approve the parties' proposed settlement, a District Court in the Sixth Circuit should look to both the factors found in Rule 23 as well as the Sixth Circuit's traditional factors." *Doe v. Ohio,* No. 2:91-cv-00464, 2020 WL 728276, at *3 (S.D. Ohio Feb. 12, 2020), *report and recommendation adopted,* No. 2:91-cv-464, 2020 WL 996561 (S.D. Ohio Mar. 2, 2020) (citations omitted); *see also Wilson v. Anthem Health Plans of Kentucky, Inc.,* No. 3:14-cv-743, 2019 WL 6898662, at *3 (W.D. Ky. Dec. 18, 2019) ("The Advisory Committee, in amending Rule 23(e), did not intend to displace factors developed by the circuit courts in deciding whether to approve a proposed settlement agreement, but rather to "focus the court ... on the core concerns ... that should guide" the court's determination.") (quoting Federal R. Civ. P. 23(e) advisory committee's note to 2018 amendment).

## B.    The Settlement Is Fair, Reasonable, and Adequate Under the Rule 23 and Sixth Circuit Factors

Application of both the Rule 23(e)(2) and the above Sixth Circuit considerations demonstrates that the Settlement is fair, reasonable, and adequate and should be preliminarily approved.

### 1.    The Likelihood of Success on the Merits

"The "likelihood of success on the merits" is the most important factor and warrants discussion before the others." *Ware*, 2020 WL 2441415, at *11 (citations omitted). Courts, however, "not required 'to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.'" *Ditsworth v. P & Z Carolina Pizza*, No. 1:20-cv-00084, 2021 WL 2941985, at *2 (W.D. Ky. July 13, 2021) (quoting *Officers for Just. v. Civ. Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982)).

As evidenced from PharMerica's motion to dismiss and reply briefs, Plaintiffs faced significant risks as to the merits of their case. Even if those were overcome, PharMerica would have vigorously opposed class certification. Other district courts have found that such risks and uncertainty support the approval of a settlement. *Cheryl Gaston v. FabFitFun, Inc*., No. 2:20-CV-09534, 2021 WL 6496734, at *3 (C.D. Cal. Dec. 9, 2021) ("Historically, data breach cases have experienced minimal success in moving for class certification.") (collecting cases); *Gordon v. Chipotle Mexican Grill, Inc.,* No. 17-cv-01415, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases such as the instant case are particularly risky, expensive, and complex, and they present significant challenges to plaintiffs at the class certification stage.") (internal citations omitted). This factor supports approval.

### 2.    The Class Representatives and Class Counsel have Adequately Represented the Class

Under Rule 23(e)(2)(A), the Court considers whether the class representatives and class counsel adequately represented the class. FED. R. CIV. P. 23(e)(2)(A). As discussed in more detail below, Plaintiffs and Plaintiffs' counsel have done so here. Plaintiffs' counsel has handled this matter on a contingency basis for over a year, and have been able to secure a nationwide settlement that will provide significant benefits to Class Members.  This factor supports approval.

### 3.    The Proposed Settlement Is the Product of Arms-Length Negotiations Among Experienced Counsel

FED. R. CIV. P. 23(e)(2)(B) asks whether the proposal was negotiated at arm's length. As discussed above, the Settlement Agreement is the product of a mediation sessions with Steven R. Jaffe.[2] These negotiations were conducted at arm's length in good faith by experienced counsel.

---

[2] Mr. Jaffe's biography is available at https://www.uww-adr.com/Steven-R--Jaffe-10-727.html   (last visited Sept. 17, 2025).

Indeed, the parties were at a logjam which was only broken by way of a mediator's proposal from Mr. Picker. This factor supports the fairness of the settlement. *See Bert v. AK Steel Corp.*, No. 02-cv-467, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008) ("participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties"); *Wilson*, 2019 WL 6898662, at *3 (citing the involvement of a magistrate judge at a settlement conference in support of finding that the settlement was negotiated at arm's length); *Peck*, 2019 WL 3219150, at *6 (same, with respect to using "an experienced" private mediator).

### 4.    The Relief Under the Proposed Settlement Is Adequate

In determining whether the class-wide relief is adequate under Rule 23(e)(2)(C), the Court considers "the costs, risks, and delay of trial and appeal"; "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims"; "the terms of any proposed award of attorney's fees, including timing of payment"; and "any agreement required to be identified under Rule 23(e)(3)."[3] FED. R. CIV. P. 23(e)(2)(A)-(D). The parties had a detailed understanding of their respective arguments and defenses heading into their mediation by virtue of having fully-briefed PharMerica's motion to dismiss. In contrast to the uncertainty and delays attendant to protracted litigation, the settlement "provides a significant, easy-to-obtain benefit to class members." *In re Haier Freezer Consumer Litig.*, No. 5:11-cv-02911-EJD, 2013 WL 2237890, at *4 (N.D. Cal. May 21, 2013); *see also Ebarle v. Lifelock, Inc.*, No. 15-cv-00258-HSG, 2016 WL 234364, at *8 (N.D. Cal. Jan. 20, 2016) (settlement that provides immediate benefits to class members has value compared to the risk and uncertainty of

---

[3] There are no side agreements to disclose under Rule 23(e)(3).

continued litigation).

As to the other considerations under Rule 23(e), the Settlement's proposed method of distributing relief to the class is not unduly burdensome, yet deters fraudulent claims. *See* FED. R. CIV. P. 23(e)(2)(C)(ii). All Class Members will be entitled to make a claim for an Alternative Cash Payment, which is a monetary payment without any documents. In the alternative, Class Members who have actually incurred expenses more likely than not connected to the Data Security incident (and, therefore, are likely to have records of such an event) may recover up to $10,000 of those expenses subject to a reasonable documentary proof requirement. Separately, California Settlement Class Members will also be able to claim a monetary payment in addition to the above benefits in recognition of their statutory claims under the CCPA. Finally, the amount of Plaintiffs' attorneys' fees and litigation expenses are reasonable. *See* FED. R. CIV. P. 23(e)(2)(C)(iii); *Ware*, 2020 WL 2441415, at *15 ("…one-third of the common fund is a reasonable fee in this case for the purposes of Rule 23."). The proposed order requires Plaintiffs to file their motion for attorneys' fees and expenses before the expiration of the objection period so that class members will have a fair opportunity to review these requests.

### 5.    The Settlement Treats Class Members Equitably Relative to Each Other

"A district court's 'principal obligation' in approving a plan of allocation 'is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund.'" *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 326 (3d Cir. 2011) (quoting *Walsh v. Great Atl. & Pac. Tea Co., Inc.*, 726 F.2d 956, 964 (3d Cir. 1983)). This requirement can be satisfied even where, like here, the class members will be entitled to different amounts. *Peck v. Air Evac. EMS, Inc.*, No. 5: 18-cv-615, 2019 WL 3219150, at *7 (E.D. Ky. Jul. 17, 2019) ("While the class members will receive differing amounts, the amount that each class member will receive is based on the actual number

of unpaid overtime hours that each person worked.").

Here, all Class Members are eligible to file claims for the same benefits if those benefits apply to them. All Class Members may request the *pro rata* cash payment, all Class Members may choose to enroll in Kroll Complete Monitoring, and all Class Members who can provide documentary evidence of any out-of-pocket expenses fairly traceable to the Data Incident may request reimbursement for those expenses up to $10,000.00. Thus, the Settlement ensure that all Class Members are treated equitably in relation to each other.

### 6.    The Risk of Fraud or Collusion

"Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Green,* 2022 WL 1240432, at *4 (quoting *Thacker v. Chesapeake Appalachia*, L.L.C., 695 F. Supp. 2d 521 (E.D. Ky. 2010)). Furthermore, "'the participation of an independent mediator in the settlement negotiations virtually assures that the negotiations were conducted at arm's length and without collusion between the parties.'" *Ditsworth*, 2021 WL 2941985, at *3 (*Hainey v. Parrott*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007)). *Accord Wilson,* 2019 WL 6898662, at *5. There is no fraud or collusion here. The parties reached the Settlement through protracted, adversarial negotiations and with the assistance of a respected mediator.

### 7.    The Complexity, Expense and Likely Duration of Litigation

As discussed above, the parties have evaluated the risks, delay, and complexity of this case. Courts have recognized that "most class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." *Ditsworth*, 2021 WL 2941985, at *3 (quoting *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001)). Had the parties not efficiently resolved the matter, it may have been years before the case went to trial and there was always a risk of non-recovery. Given that reality, "an early resolution is beneficial to the class and the defendant." *Peck*, 2019 WL 3219150, at *7. This factor supports

14

approval. *See Wilson,* 2019 WL 6898662, at *5.

### 8. The Amount of Discovery Engaged in by the Parties

"In considering whether there has been sufficient discovery to permit the plaintiffs to make an informed evaluation of the merits of a possible settlement, the court should take account not only of court-refereed discovery but also informal discovery in which parties engaged both before and after litigation commenced." *Ditsworth,* 2021 WL 2941985, at *3 (quoting *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253, at *4 (S.D. Ohio Aug. 17, 2018). "[T]he absence of formal discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties." *Id.*; *see also In re Wawa, Inc. Data Sec. Litig.,* No. 19-cv-6019, 2021 WL 3276148, at *9, n. 4 (E.D. Pa. July 30, 2021) ("Although the Consumer Plaintiffs and Wawa did not engage in 'formal' discovery, that is not necessarily an obstacle for preliminary approval of a class action settlement, especially where, as here, the parties have exchanged important informal discovery.") (citation omitted). As discussed above, PharMerica informally provided Plaintiffs with sufficient information, including for example, information about the size and scope of the Class as well as PII allegedly compromised, to confirm that the settlement is fair, reasonable and adequate. This point supports approval of the Settlement.

### 9. The Opinions of Class Counsel and Class Representatives

"'The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement.'" *Green,* 2022 WL 1240432, at *5 (quoting *UAW v. Ford Motor Co.*, No. 07-cv-14845, 2008 WL 4104329, at *26 (E.D. Mich. Aug. 29, 2008)). Here, "the experienced attorneys on each side, after assessing the relative risks and benefits of litigation, believe that the settlement is fair and reasonable." *Wilson,* 2019 WL 6898662, at *6. All Plaintiffs and Plaintiffs' counsel support the Settlement here.

15

### 10. The Reaction of Absent Class Members

Since class notice has not yet been provided at this preliminary stage, "the reaction of absent class members does not yet weigh one way or the other in determining whether settlement is appropriate." *Green*, 2022 WL 1240432, at *5 (W.D. Ky. Apr. 27, 2022). *See also Wilson,* 2019 WL 6898662, at *6 ("At the pre-notice stage, the Court does not yet know how absent class members will respond."). Plaintiffs will address this point in connection with their forthcoming motion for final approval of the settlement.

### 11. The Public Interest

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Green,* 2022 WL 1240432, at *5 (*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003)). *See also Ditsworth,* 2021 WL 2941985, at *4 (W.D. Ky. July 13, 2021) ("Class counsel took on a [ ] case that an individual class member would almost certainly never file on [his or her] own. The Settlement Class, moreover, obtained recovery on a class-wide basis for an alleged injury that, but for this litigation, would almost certainly have gone uncompensated.'") (quoting *Lonardo v. Travelers Indem. Co*., 706 F. Supp. 2d 766, 782 (N.D. Ohio 2010)). Here, it is virtually certain that no other case would be brought to pursue these claims on an individual basis.

### C. The Court Will Be Able to Certify the Class for Purposes of Settlement

Before granting preliminary approval of a proposed settlement, a Court must also determine that the proposed settlement class is appropriate for certification. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Class certification is proper if the proposed class satisfies the numerosity, commonality, typicality, and adequacy of representation requirements. FED. R. CIV. P.

23(a). Because certification is sought under Rule 23(b)(3), Plaintiffs must also demonstrate that common questions of law or fact predominate over individual issues and that a class action is the superior device to adjudicate the claims. *Amchem*, 521 U.S. at 615–16. District courts have broad discretion to determine whether certification is appropriate. *See In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013).

When a litigation class has not been certified prior to a settlement, the Court considers whether "it likely will be able, after the final hearing, to certify the class." FED. R. CIV. P. 23(e)(1) advisory committee's note to 2018 amendment; *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,* 330 F.R.D. 11, 28 (E.D.N.Y. 2019) (discussing the standard for preliminary approval under "the new Rule 23(e)"). As discussed below, the Court here will likely be able to certify the proposed settlement class in connection with final approval.

### 1. The Class Members Are Too Numerous to Be Joined

Class certification requires the class to be so numerous that their joinder would be "impracticable." FED. R. CIV. P. 23(a)(1). "'[W]hile there is no strict numerical test, 'substantial' numbers usually satisfy the numerosity requirement.'" *Ware,* 2020 WL 2441415, at *8 (quoting *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006)). *See also Curry v. SBC Commc'ns, Inc.*, 250 F.R.D 301, 310 (E.D. Mich. 2008) ("In most cases, a class in excess of forty members will do."). Here, the class consists of millions of members and easily satisfies this requirement.

### 2. There are Common Questions of Law and Fact

Rule 23 next requires the presence of common questions of law or fact. FED. R. CIV. P. 23(a)(2). "'Commonality requires the plaintiff to demonstrate that the class members have suffered 'the same injury,' but '[t]his does not mean merely that they have all suffered a violation of the same provision of law.'" *Ware,* 2020 WL 2441415, at *8 (quoting *Walmart Stores, Inc. v. Dukes*,

564 U.S. 338, 349-50 (2011)). "'The commonality test is qualitative, rather than quantitative, that is, there need be only a single issue common to all members of the class.'" *Peck v. Air Evac EMS, Inc.*, No. 5:18-cv-615-DCR, 2019 WL 3219150, at *3 (E.D. Ky. July 17, 2019) (quoting *In re American Medical Sys.*, 75 F.3d at 1080). The common questions in this case include, *inter* alia, whether and what kind of legal duty PharMerica had to protect the data of Class Members, whether express or implied contracts existed and were breached, and whether PharMerica acted negligently in storing the data. This requirement is, therefore, satisfied for settlement purposes. *See In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.,* No. 3:08-md-01998, 2009 WL 5184352, at *3 (W.D. Ky. Dec. 22, 2009) (finding that a list of similar common questions satisfied commonality for purposes of certifying a class in a data breach settlement).

### 3.    Plaintiffs' Claims Are Typical of the Class

A class representative's claims must be typical of those of other class members. FED. R. CIV. P. 23(a)(3). Typicality assesses "whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998). Plaintiffs satisfy the typicality requirement where their "claim arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007). The claims need not be identical; rather, they need only "arise from the same course of conduct." *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997).

Plaintiffs and class members have the same types of claims against the same defendant stemming from the same alleged violations related to the same data security incident. Typicality is established. *See, e.g., Peck,* 2019 WL 3219150, at *3 (finding typicality met where the class representative "was subject to the same overtime provisions as the other members of the putative

class and his injury is directly related to the wrong of the class."); *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.,* 2009 WL 5184352, at *3 (typicality satisfied "because all class members had their private information compromised, and their claims arise from the same course of uniform conduct of [the defendant].").

> ### 4.    Plaintiffs and Class Counsel Will Fairly and Adequately Protect the Interests of the Class

The Class representatives must fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(a)(4). The Sixth Circuit has "'articulated two criteria for determining adequacy of representation: '1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *Ware,* 2020 WL 2441415, at *9 (E.D. Ky. May 12, 2020) (quoting *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1083 (6th Cir. 1996)).

This criteria is satisfied with respect to both Class Counsel and the named Plaintiffs.

> #### a.    *Class Counsel Are Adequate*

Rule 23(g) sets forth the criteria for evaluating the adequacy of Plaintiffs' counsel:

(i) the work counsel has done in identifying or investigating potential claims in the action;

(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii) counsel's knowledge of the applicable law; and

(iv) the resources that counsel will commit to representing the class . . . . FED. CIV. P. 23(g)(1)(A).

Plaintiffs' counsel are well qualified to serve as Class Counsel. These are the same lawyers that the Court had designated as interim co-lead counsel in its October 16, 2023 Order (ECF No. 31). Collectively, they have decades of experience successfully representing plaintiffs and classes in complex class action litigation, including in consumer product defect cases. Adequacy is

satisfied here. *See In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.,* 2009 WL 5184352, at *5 ("Settling Plaintiffs' Counsel assert extensive experience in class litigation, including in the area of data breaches. Courts have previously approved class counsel with experience in conducting class actions as adequate.").

### b.    *The Named Plaintiffs are Adequate.*

Plaintiffs have agreed to serve in a representative capacity, communicated diligently with their attorneys, gathered relevant documents and produced them to their attorneys, and helped prepare the allegations in the Complaint. These Plaintiffs and the putative class members "share the common goal of maximizing recovery for the class and that there is no conflict between them." *Thacker v. Chesapeake Appalachia, L.L.C.,* 259 F.R.D. 262, 268 (E.D. Ky. 2009). These Plaintiffs "'vigorously prosecute[d] the interests of the class through qualified counsel.'" *Davis v. Omnicare, Inc.,* No. 5:18-cv-142, 2021 WL 4188053, at *4 (E.D. Ky. Sept. 14, 2021) (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)). Adequacy is therefore satisfied with respect to the five named plaintiffs. *See Peck,* 2019 WL 3219150, at *4 (adequacy satisfied where "[t]he named plaintiff in this action is a member of the class, he suffered the same injury as the unnamed class members, and he possesses the same interest in receiving his past overtime compensation.").

### 5.    The Requirements of Rule 23(b)(3) Are Met

After satisfying Rule 23(a), a plaintiff must also satisfy one of the three requirements of Rule 23(b) for a court to certify a class. FED. R. CIV. P. 23(b); *Merenda v. VHS of Michigan, Inc.*, 296 F.R.D. 528, 536 (E.D. Mich. 2013). Plaintiffs seek certification under Rule 23(b)(3), which requires that (i) common questions of law and fact predominate over individualized ones, and that (ii) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. FED. R. CIV. P. 23(b)(3). "A plaintiff must establish that the issues in the class

action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *Beattie*, 511 F.3d at 564. This requirement considers "the difficulties likely to be encountered in the management of a class action" and issues with individual litigation. *Id.*; *see also Amchem*, 521 U.S. at 617 ("[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action[.]"). As set forth below, the predominance and superiority requirements are met here.

### a. Common Issues of Law and Fact Predominate for Settlement Purposes

"The 'predominance' inquiry requires the Court "to assess the legal or factual questions that qualify each class member's case as a genuine controversy ... and assess whether those questions are subject to generalized proof, and thus applicable to the class as a whole."" *Ware*, 2020 WL 2441415, at *9 (quoting *Sandusky Wellness Center, LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 468 (6th Cir. 2017)). Predominance is met if a single factual or legal question is "at the heart of the litigation." *See Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). Predominance is ordinarily satisfied, for settlement purposes, when the claims arise out of the defendant's common conduct. *See, e.g.*, *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 299-300 (3d Cir. 2011) ("[T]he focus is on whether the defendant's conduct was common as to all of the class members.").

Predominance is satisfied here. Whether PharMerica "violated the various laws alleged in the Complaint[] is a question that is common to all class members. The proof required focuses on Defendant's conduct, not on the conduct of individual class members." *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2009 WL 5184352, at *6. *See also In re Wawa, Inc. Data Sec. Litig.*, No. 19-cv-6019, 2021 WL 3276148, at *4 (E.D. Pa. July 30, 2021) ("In this case, there

is a myriad of questions of law and fact that predominate. These include: whether Wawa owed a duty to class members to safeguard their payment card information; whether Wawa breached that duty; whether Wawa violated state consumer protection laws; whether Wawa knew or should have known that its payment processing systems were susceptible to attack; whether Wawa complied with industry standards (i.e., the Payment Card Industry Data Security Standard—PCI DSS);

whether Wawa's conduct or failure to act was the proximate cause of the breach; and whether plaintiffs and the class members are entitled to recovery."). As found in these other data breach cases, common questions predominate for settlement purposes.

> **b.    A Class Action Is a Superior Means of Resolving This Controversy**

Rule 23(b)(3)'s superiority inquiry "requires a plaintiff to show "'that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.' " *In re Fam. Sols. of Ohio, Inc.,* No. 21-cv-0303, 2022 WL 13915151, at *3 (6th Cir. June 17, 2022) (quoting FED. R. CIV. P. 23(b)(3)). "The superiority requirement of Rule 23(b)(3) is met if the class action is a better way than individual litigation to adjudicate a claim." *Calloway v. Caraco Pharm. Labs., Ltd.,* 287 F.R.D. 402, 407–08 (E.D. Mich. 2012). This is especially true in situations which "vindicat[e] the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Amchem*, 521 U.S. at 617.

Here, given the relatively low value of the individual claims, class members are unlikely to bring (and have not brought) individual lawsuits against PharMerica. Furthermore, because the class members number several million, class-wide resolution of their claims in a single action is efficient. *See Ware,* 2020 WL 2441415, at *10 (finding that superiority was satisfied where "[t]here is no indication that any individual class members have instituted their own individual claims regarding this matter" and no indication that the class action "would be difficult to

manage.").

For these reasons, consistent with Rule 23(e)(1)(B), the Court may certify the settlement class in this case.

### D.    The Proposed Class Notice and Plan for Dissemination Are Reasonable and Should Be Approved

Once the Court has granted preliminary approval to the settlement, it "'must direct notice in a reasonable manner to all class members who would be bound by the proposal.'" *Wilson*, 2019 WL 6898662, at *6 (quoting FED. R. CIV. P. 23(e)(1)). The notices should be "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Peck*, 2019 WL 3219150, at *8 (quoting *UAW*, 497 F.3d at 629).

The notices presented as Exhibits 1-3 to the Settlement Agreement comply with Rule 23 and the due process mandates. Using plain language, the proposed notices provide all information required under Rule 23(c)(2)(B). The proposed notice program provides for direct mail postcard notice, with skip traces to be conducted and remailing to be attempted for any undeliverable notices returned. The settlement website will be a useful resource for class members—it will post the Claim Form, the long-form notice, and key pleadings in the case, including the attorneys' fee application once it is filed. The Settlement Administrator will also establish a toll-free number for class members to call with questions. This plan provides the best notice practicable under the circumstances. *See In re Ins. Broker Antitrust Litig.*, 297 F.R.D. 136, 152 (D.N.J. 2013) (finding notice via postcards to be sufficient).

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court (1) grant preliminary approval of the Settlement; (2) certify the settlement class pursuant to FED. R. CIV. P.

23(a) and (b)(3); (3) direct notice to the settlement class; and (4) set a schedule for settlement proceedings, including the final fairness hearing.

Dated: October 3, 2025

Respectfully submitted,

*/s/ J. Gerard Stranch, IV*

J. Gerard Stranch, IV (*Pro Hac Vice*)
**STRANCH, JENNINGS & GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Tel.: 615-254-8801
Fax: 615-255-5419
gstranch@stranchlaw.com

*Interim Lead Counsel*

E. Michelle Drake (*Pro Hac Vice*)
**BERGER MONTAGUE, PC**
43 SE Main Street, Suite 505
Minneapolis, Minnesota 55414
Tel.: 612-594-5999
Fax: 612-584-4470
emdrake@bm.net

Gary Klinger (*Pro Hac Vice*)
**MILBERG COLEMAN PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Tel.: (866) 252-0878
gklinger@milberg.com

Lynn A. Toops (*Pro Hac Vice*)
**COHEN & MALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
Tel: (317) 636-6481
Fax: (317) 636-2539
ltoops@cohenandmalad.com

*Co-Members of Plaintiffs' Executive Committee*

Augustus Herbert

**GRAY ICE HIGDON, PLLC**
3939 Shelbyville Road, Suite 201
Louisville, Kentucky 40207
Direct: 502.625.2732
Fax: 502.561.0442
aherbert@grayice.com

*Liaison Counsel*

*Counsel for Plaintiffs and the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

It is hereby certified that on October 3, 2025, a true and accurate copy of the foregoing was

filed with the Clerk of the Court via the Court's CM/ECF system, which will then send electronic

notification of such filing to all counsel of record.

*/s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV (*Pro Hac Vice*)

**Interim Lead Counsel**