UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

JAKETRIUS LURRY, individually and on behalf of all others similarly situated,

Plaintiff

v.

Civil Action Lead Case No. 3:23-cv-297-RGJ

PHARMERICA CORPORATION,

Defendants

## MEMORANDUM OPINION & ORDER

Plaintiffs David Hibbard, Frank Raney, James Young, Holly Williams, Micaela Molina, and Charley Luther ("Plaintiffs") request that the Court preliminarily approve a nationwide class action Settlement with Defendant PharMerica Corporation ("PharMerica"). [DE 146]. PharMerica does not oppose Plaintiffs' motion. For the following reasons, the Plaintiffs' unopposed motion [DE 146] is **GRANTED.**

### I. BACKGROUND

PharMerica is a pharmacy services provider for various healthcare facilities and programs nationwide. [DE 38 at 506]. PharMerica collects and maintains personal identifiable information ("PII") and protected health information ("PHI") (collectively, "personal information") of its clients' patients and employees. [*Id.* at 507]. Plaintiffs allege that in March of 2023 a cybercriminal ransomware gang targeted PharMerica's computer network and exfiltrated 4.7 terabytes of information, including Plaintiffs' personal information (the "Data Incident"). [DE 146 at 983–83]. Thereafter, Plaintiffs filed their individual complaints, which were consolidated into the instant matter on July 19, 2023. [DE 20].

1

On October 16, 2023, after reviewing multiple competing motions for appointment, this Court entered an order appointing J. Gerard Stranch, IV of Stranch, Jennings, & Garvey, PLLC as Interim Lead Counsel, E. Michelle Drake of Berger Montague, P.C., Gary M. Klinger of Milberg Coleman Phillips Grossman, PLLC, and Lynn A. Toops of CohenMalad, LLP, as Executive Committee Co-Members, and August Herbert of Gary Ice Higdon as Liaison Counsel. [DE 31].

On November 30, 2023, Plaintiffs filed their Consolidated Class Action Complaint. [DE 33]. Subsequently, on January 12, 2024, Plaintiffs filed their First Amended Consolidated Class Action Complaint. [DE 38].

On June 12, 2024, the Court granted in part and denied in part PharMerica's motion to dismiss. [DE 46]. Shortly thereafter, the parties exchanged informal discovery regarding the Data Incident, including details as to how the incident occurred, who was involved, the specific data elements impacted, liability, and damages. [DE 146 at 983–84]. Then, on August 1, 2025, the parties engaged in formal mediation which resulted in an agreement to settle. [*Id.* at 984]. Over the next several weeks, the parties finalized the Settlement Agreement,[1] including by working with Kroll Settlement Administration, LLC ("Kroll" or the "Settlement Administrator"), to create the Notice Program and Notices, and to formulate the Claims Process and draft the Claim Form. [*Id.*].

Plaintiffs now seek preliminary approval of the Settlement Agreement.

---

[1] The Settlement Agreement is attached as Exhibit A to Plaintiffs' unopposed motion. [DE 146-1]. All capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in the Settlement Agreement.

## II. PROPOSED SETTLEMENT AGREEMENT

### A. The Settlement Class

Under the terms of the Settlement Agreement, the Settlement Class is defined as "all living persons in the United States who were provided notice of the Data Incident." [DE 146-1 ¶ 59]. Excluded from the Settlement Class are:

> [A]ll persons who are directors and officers of Defendant, governmental entities, anyone who validly and timely opts out of the Settlement, and the judge(s) assigned to the Action, the Judge's immediate family, and Court staff.

[*Id.*] Any Class Members, as defined above, will have until thirty (30) days before the initial scheduled Final Approval Hearing to opt out of the Settlement. [*Id.* ¶ 46].

### B. Settlement Benefits

The Settlement Agreement creates two funds: a Settlement Fund and a Claims-Made Fund. First, PharMerica shall pay $5,275,000.00 into a non-reversionary fund (the "Settlement Fund"). Following the payment of: (1) all Settlement Administration Costs, (2) PharMerica's past and future costs of data mining to confirm membership in the Settlement Class; (3) any Service Awards awarded to Class Representatives; and (4) attorneys' fees and costs as awarded to Class Counsel, the Settlement Fund will provide Class Members with the ability to claim a cash payment that will be increased or decreased on a *pro rata* basis. [DE 146-1 ¶¶ 65-66, 70(b)].

In addition to the Settlement Fund, PharMerica will pay claims for documented out-of-pocket expenses up to $10,000 per Class Member and one year of Kroll Complete Monitoring on a claims-made basis (the "Claims-Made Fund"). [*Id.* ¶¶ 70-71]. Kroll Complete Monitoring includes credit monitoring, dark web monitoring, pay day loan monitoring, social security scan, fraud consultation, identity theft restoration services (including victim assistance and customer support), $1,000,000 of insurance coverage for fraud and/or identity theft with no deductible, credit

score reporting, and real-time inquiry alerts. [*Id.* ¶ 71]. Class Members will have until fifteen (15) days before the initial scheduled Final Approval Hearing to submit a claim. [*Id.* ¶ 55].

Lastly, the Settlement Agreement provides that PharMerica has adopted, paid for, implemented, and will maintain certain "Business Practice Changes" related to information security to safeguard personal information on its systems. [*Id.* ¶ 72.]

### C. Notice Program

Within 14 days of preliminary approval, PharMerica will provide Kroll with a list of Class Members. [DE 146 at 986]. Kroll will administer the Notice Program by sending Email Notices and/or Postcard Notices, depending upon the type of information maintained by PharMerica. [*Id.*]. Pursuant to the Settlement Agreement,

> The Notice shall include a description of the material terms of the Settlement; how to submit a Claim Form; the Claim Form Deadline; the Opt-Out Deadline for individuals in the Settlement Class to opt-out of the Settlement Class; the Objection Deadline for Settlement Class Members to object to the Settlement and/or the Application for Attorneys' Fees, Costs, and Service Awards; the Final Approval Hearing date; and the Settlement Website address at which Settlement Class Members may access [the Settlement] Agreement and other related documents and information. Kroll will also establish a Settlement Website to provide Class Members with all relevant information and documents, including the Settlement Agreement, Claims and Notice Forms, and Court orders. Moreover, Kroll will perform reasonable address trace efforts for any Postcards that are returned as undeliverable.

[*Id.* (citation modified)]. Class Members wishing to opt-out will be required to postmark their request to Kroll. Class Members with objections must "must mail a letter to the Clerk of the Court, Class Counsel, Defendant's Counsel, and the Settlement Administrator," containing certain information as set forth in the Settlement Agreement. [*Id.* at 987 (listing nine criteria required to be addressed in objection letter)].

4

**D. Fees, Expenses, and Service Awards**

Under the terms of Settlement Agreement, Class Counsel will apply to the Court for an award of attorneys' fees of "up to $3,481,750.00, which equates to 33% of the Settlement Fund and significantly less than one-third of the value of Cash Payment A – Documented Losses, and Credit Monitoring, made available through the Settlement." [*Id.* at 988]. Only a portion of the award will come from the Settlement Fund. "If approved, $1,740,750.00 shall be payable out of the Settlement Fund and $1,741,000.00 payable directly" PharMerica. [*Id.*]. The Settlement Agreement also provides for reimbursement of Class Counsel's reasonable costs incurred, as well as service awards of "$3,500" Service Award for each of the named Plaintiffs. [*Id.*].

**E. Release**

Finally, in consideration for the benefits conferred to the Class Members, the Settlement Agreement provides that "all Class Members who do not timely and validly opt out" will release PharMerica from "any and all past, present, and future claims and causes of action related to the Data Incident." [*Id.* at 989].

### III. STANDARD

The claims of a "class proposed to be certified for purposes of settlement" may be settled "only with the court's approval." Fed. R. Civ. P. 23(e); *see also Wayside Church v. Van Buren Cnty., Michigan*, 103 F.4th 1215, 1222 (6th Cir. 2024). Under Rule 23(e), "class action settlement approval involves a three-step process": (1) "preliminary approval of the proposed settlement," (2) "notice of the settlement to all affected class members," and (3) a "final approval hearing." *Garner Props. & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 620 (E.D. Mich. 2020) (quotation mark omitted); *see also Thacker v. Chesapeake Appalachia, LLC*, 259 F.R.D. 262, 270 (E.D. Ky. 2009) (citing *Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier,* 262 F.3d 559, 565–66 (6th Cir. 2001)).

5

This case has reached the first step. The parties must "show[] that the court will likely be able to" both (1) approve the proposed settlement as "fair, reasonable, and adequate" and (2) "certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)–(2). "[I]f giving notice is justified by the parties' showing," the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). At step two, after receiving notice, "[a]ny class member may object to the proposal." Fed. R. Civ. P. 23(e)(5)(A). At step three, a hearing must take place before the Court finally approves any class-action settlement. Fed. R. Civ. P. 23(e)(2).

## IV. ANALYSIS

### A. Preliminary Approval of Proposed Settlement

At this stage, "[t]he parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A). Notice will be given if the parties can show "that the court will likely be able to" (1) "approve the proposal under Rule 23(e)(2)" and (2) "certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

#### i. *Likelihood of Approval Under Rule 23(e)(2)*

The Court may approve a proposed class action settlement only after a hearing and only on finding that it is fair, reasonable, and adequate after considering" several factors. Fed. R. Civ. P. 23(e)(2). Rule 23 provides "the primary framework" for making that determination. *Garner Props. & Mgmt.*, 333 F.R.D. at 621 n.4 (discussing Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment). The Court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate; . . . [and]
> (D) the proposal treats class members equitably relative to each other.

6

Fed. R. Civ. P. 23(e)(2).

Further, under a prior version of the Rule, the Sixth Circuit identified additional considerations that guide the inquiry into whether a class settlement is fair, reasonable, and adequate." *McKnight v. Erico Int'l Corp.*, 655 F. Supp. 3d 645, 655 (N.D. Ohio 2023) (citing *Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1093 (6th Cir. 2016)). The Sixth Circuit factors are:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp. ("UAW v. GMC")*, 497 F.3d 615, 631 (6th Cir. 2007). "[I]n considering whether to approve the parties' proposed settlement, a District Court in the Sixth Circuit should look to both the factors found in Rule 23 as well as the Sixth Circuit's traditional factors." *Doe v. Ohio*, No. 2:91-cv-00464, 2020 WL 728276, at *3 (S.D. Ohio Feb. 12, 2020), *report and recommendation adopted*, No. 2:91-cv-464, 2020 WL 996561 (S.D. Ohio Mar. 2, 2020) (citations modified); *see also Wilson v. Anthem Health Plans of Kentucky*, Inc., No. 3:14-cv-743, 2019 WL 6898662, at *3 (W.D. Ky. Dec. 18, 2019) ("The Advisory Committee, in amending Rule 23(e), did not intend to displace factors developed by the circuit courts in deciding whether to approve a proposed settlement agreement, but rather to "focus the court . . . on the core concerns . . . that should guide" the court's determination.") (quoting Federal R. Civ. P. 23(e) advisory committee's note to 2018 amendment).

"At the stage of preliminary approval, the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval." *Lott v. Louisville Metro Gov't*, No. 3:19-cv-271, 2023 WL 2562407, at *1 (W.D. Ky. Mar. 17, 2023) (quoting *Spine & Sports Chiropractic, Inc. v. ZirMed, Inc.*, No. 3:13-cv-00489, 2015 WL 1976398, at *1 (W.D. Ky. May 4, 2015)). "Courts apply a degree of scrutiny sufficient

to avoid 'rubber-stamp[ing]' a proposed settlement agreement, while still being 'mindful of the substantial judicial processes that remain to test the assumptions and representations upon which the [proposed settlement agreement] are premised.'" *Id.* (quoting *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 338 (N.D. Ohio 2001)).

"The question at the preliminary-approval stage is simply whether the settlement is fair enough to begin the class-notice process." *Strano v. Kiplinger Washington Eds., Inc.*, 649 F. Supp. 3d 546, 553 (E.D. Mich. 2023) (*Strano II*) (citation modified). Thus, a settlement proposal "warrants preliminary approval if it is within the range of what ultimately could be considered fair, reasonable, and adequate—a determination left to the sound discretion of the Court." *Bowling v. Pfizer*, 144 F. Supp. 3d 945, 952 (S.D. Ohio 2015).

1. Adequate Representation and Non-Collusive Negotiations

The Court first considers the procedural factors set out in Rule 23(e)(2)(A)-(B) and the first *UAW* factor. The primary procedural inquiry is whether the settlement "ar[ises] out of arms-length, non-collusive negotiations." *In re AME Church Employee Retirement Fund Litigation*, 2025 WL 900003, at *6 (W.D. Tenn. 2025). "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008) (citation omitted). *See also Inter-Op Hip Prosthesis*, 204 F.R.D. at 351 ("[W]hen a settlement is the result of extensive negotiations by experienced counsel, the Court should presume it is fair.").

Here, the uncontested record demonstrates that the Settlement Agreement was "the product of a mediation sessions with Steven R. Jaffe," an experienced mediator and the negotiations "were conducted at arm's length in good faith by experienced counsel." [DE 146 at 992]. Moreover, the proposed settlement was not reached until after Plaintiffs' and their counsel made it past the motion

8

to dismiss stage. These factors therefore weigh in favor of preliminary approval of the Settlement Agreement.

    2. Adequacy of Relief

In determining whether the class-wide relief is adequate under Rule 23(e)(2)(C), the Court considers "the costs, risks, and delay of trial and appeal"; "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims"; "the terms of any proposed award of attorney's fees, including timing of payment"; and "any agreement required to be identified under Rule 23(e)(3)."[2] Fed. R. Civ. P. 23(e)(2)(C). This analysis overlaps with the second and fourth *UAW* factors: "the complexity, expense and likely duration of the litigation; [and] . . . the likelihood of success on the merits." *UAW v. GMC*, 497 F.3d 615, 631.

Here, Plaintiffs identify face significant risks if this litigation were to proceed to trial, including but not limited to the possibility that the nationwide class would not be certified. [DE 146 at 992 (collecting cases)]. The risk that Plaintiffs' claims would not succeed on the merits is underscored by the dismissal of seven of Plaintiffs' claims on PharMerica's motion to dismiss. [DE 46]. And other courts in this circuit have recognized the substantial litigation risks associated with class actions in the context of data breach cases. *See, e.g., In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2807, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky. This unsettled area of law often presents novel questions for courts. And of course, juries are always unpredictable.").

In light of those risks, the Court finds the relief proposed is sufficiently adequate at this stage. Any Class Member who submits a valid claim will receive reimbursement for documented

---

[2] Plaintiffs report that there are no agreements to be identified under Rule 23(e)(3). [DE 146 at 993, n.3].

9

losses up to $10,000, in addition to a *pro rata* disbursement. Perhaps most importantly, "[a]ll Settlement Class Members will automatically, without having to file a Claim, receive Credit Monitoring, through Kroll Complete Monitoring." [DE 146-1 ¶ 69]. Thus, the proposal provides Class Members with substantial relief for past and future losses due to the Data Incident. Notably, the loss reimbursement is provided on a claims-made basis. Unlike the *pro rata* distribution, which will be reduced in proportion to the number of claimants based on the size of the Settlement Fund, the Claims-Made Fund is separate from the Settlement Fund and Class Members' claims will not be subject to depletion based on the number of actual claims made.

    3. Equitable Treatment of Class Members

The final Rule 23(e)(2) requirement requires the Court to consider whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). The Court finds that this factor is satisfied. As Plaintiffs explain,

> all Class Members are eligible to file claims for the same benefits if those benefits apply to them. All Class Members may request the *pro rata* cash payment, all Class Members may choose to enroll in Kroll Complete Monitoring, and all Class Members who can provide documentary evidence of any out-of-pocket expenses fairly traceable to the Data Incident may request reimbursement for those expenses up to $10,000.00.

[DE 146 at 995]. This allocation of relief appears fair and reasonable, which is all that is required at this stage.

    4. Remaining *UAW* Factors

The remaining considerations identified by the Sixth Circuit in *UAW* also support preliminary approval of the Settlement Agreement. These factors are "(3) the amount of discovery engaged in by the parties; . . . (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *UAW v. GMC*, 497 F.3d at 631. Though it appears that no formal discovery has been conducted, Plaintiffs assert that "PharMerica

10

informally provided Plaintiffs with sufficient information, including for example, information about the size and scope of the Class as well as PII allegedly compromised, to confirm that the settlement is fair, reasonable and adequate." [DE 146 at 996]. "That the parties conducted their investigation through informal discovery, or based on information assembled in a related case, is not unusual or problematic, so long as they and the court have adequate information in order to evaluate the parties' relative positions." *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006). *See also Newby v. Enron Corp.*, 394 F.3d 296, 306 (5th Cir. 2004) ("'[F]ormal discovery [is not] a necessary ticket to the bargaining table.'"). Moreover, "[a]ll Plaintiffs and Plaintiffs' counsel support the Settlement." [*Id.*]. Settlement in this case also furthers the public's interest. *See Green v. Platinum Restaurants Mid-Am. LLC*, No. 3:14-CV-439, 2022 WL 1240432, at *5 (W.D. Ky. Apr. 27, 2022) ("[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources.") (citation modified).

Accordingly, having reviewed all the relevant factors, the Court concludes that the Settlement is "fair enough to begin the class-notice process." *Strano II*, 649 F. Supp. at 553.

### ii. Likelihood of Class Certification

The Settlement Agreement proposed a Settlement Class comprised of "all living persons in the United States who were provided notice of the Data Incident." [DE 146-1 ¶ 59].

"To be certified, a class must satisfy all four of the Rule 23(a) prerequisites—numerosity, commonality, typicality, and adequate representation—and fall within one of the three types of class actions listed in Rule 23(b)." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537 (6th Cir. 2012); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). Plaintiffs assert that all four Rule 23(a) prerequisites are met and that this case falls within the third type of class action enumerated by Rule 23(b), which requires (1) "that the questions of law or fact common to class

11

members predominate over any questions affecting only individual members" and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). [*See also* DE 146 at 997–98].

"A district court may certify a class only if it 'is satisfied, after a rigorous analysis,' that the requirements of Rule 23(a) and (b) 'have been satisfied.'" *Wayside Church*, 103 F.4th at 1222 (quoting *Gen. Telephone Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). "Moreover, some of those requirements 'demand undiluted, even heightened, attention in the settlement context.'" *Id.* (quoting *Amchem Prods.*, 521 U.S. at 620). But at this preliminary stage, rigorous analysis under Rule 23(a)–(b) is not necessary. *See id.* at 1222–23 (noting that "orders entered under Rule 23(e)(1) . . . often contain little or no analysis concerning the requirements of Rule 23(a) and (b)"). The question is simply whether "the court will likely be able to . . . certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). This is part of the Court's "preliminary determination (as to certification of a class and approval of a proposed settlement)." *Wayside Church*, 103 F.4th at 1222; *see also* Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment (encouraging the simultaneous "preliminary approval" of both "the prospect of class certification" and "the proposed settlement").

1. Numerosity

While "there is no strict numerical test" for numerosity, *Daffin*, 458 F.3d at 552, the proposed class in this case "consists of millions of members" and certainly suffices. [DE 146 at 998]. *Compare with Afro Am. Patrolmen's League v. Duck*, 503 F.2d 294, 298 (6th Cir. 1974) (35 class members).

2. Commonality

Commonality "requires 'a common contention' that, if resolved, would resolve claims of all class members 'in one stroke.'" *Strano II*, 649 F. Supp. 3d at 554 (quoting *Wal-Mart Stores*, 564 U.S. at 350). "To be common, a question must (1) yield a common answer with common evidence and (2) meaningfully progress the lawsuit." *Speerly v. Gen. Motors*, LLC, 143 F.4th 306, 316 (6th Cir. 2025). To meaningfully progress the lawsuit, a question must affect at least one disputed element of each of the class's claims, which often overlaps "with the merits inquiry." *Speerly*, 143 F.4th at 316–18. In this way, "not every question with a common answer meets" Rule 23(a)(2)'s commonality requirement. *Id.* at 316. Only those which "affect at least one" disputed "element" of the class's claims suffice. *Id.* (citation modified). Moreover, "[t]he decisionmaker must be able to resolve the question with 'a yes-or-no answer for the class in one stroke.'" *Id.* at 316–317 (citation modified). "[T]he court must 'walk through each cause of action, identify the relevant elements, and evaluate which elements, if any, submit to common answers.'" *Id.* at 317.

Plaintiffs identify multiple questions which they contend are common among the class, including "whether and what kind of legal duty PharMerica had to protect the data of Class Members, whether express or implied contracts existed and were breached, and whether PharMerica acted negligently in storing the data." [DE 146 at 999]. Though Plaintiffs fail to address which elements of their claims these common questions resolve, the Court finds that commonality is likely met here because each remaining cause of action in the Consolidated Complaint alleges that PharMerica failed to adequately secure Plaintiffs personal information. [DE 38 ¶ 243 (alleging PharMerica ""fail[ed] to adopt, implement, and maintain adequate security measures to safeguard Class Members' Personal Information."). *See also id.* ¶¶ *274,* 300, 315, 377 (containing substantially identical allegations in Counts II, V, VI, XIII)]. Thus, because this

13

common contention depends on the acts and omissions of PharMerica, rather than facts particular to any particular class member, it presents a yes-or-no question which would meaningfully progress the lawsuit if resolved. Other courts have found this factor satisfied in similar data breach cases. *See, e.g., In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at *3 (W.D. Ky. Dec. 22, 2009) (finding "whether [defendant] acted negligently in collecting and storing Settlement Class Members' Private Information" presented a common question of law or fact); *In re Cinfed Fed. Credit Union Data Breach Litig.*, 2025 WL 1637686, at *6 (holding "whether Cinfed negligently secured their personal data" was a common question).

Although the Court ultimately concludes that commonality is likely satisfied, the Court is mindful of the Sixth Circuit's recent guidance that, to certify a class "[a] court may not simply ask whether generalized questions yield a common answer." *Speerly*, 143 F.4th at 318. *Speerly*'s requirement that a court "walk through each cause of action" and "identify the relevant elements" is particularly onerous in the context of certifying a nationwide class, as Plaintiffs seek in this case. *Id.* at 317. When moving for final approval, Plaintiffs should specifically address *Speerly*, including by identifying the elements of each cause of action.

3. Typicality

"A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (quotation marks omitted). As discussed above, Plaintiffs' and the class members' claims all arise from the same alleged acts and omissions of PharMerica and seek relief related to the alleged Data Incident. Typicality is likely established.

4. Adequate Representation

"There are two criteria for determining whether the representation of the class will be adequate: 1) The representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 524–25 (6th Cir. 1976). The Court has no reason at this time to doubt Plaintiffs or their counsel on either criterium. [*See* DE 146 at 1000–01 (addressing criteria)].

5. Predominance and Superiority

Finally, Plaintiffs have established that the proposed class action likely satisfies the requirements of predominance and superiority under Rule 23(b)(3). "Predominance is satisfied if the Class's individual questions of law or fact 'are sufficiently cohesive to warrant adjudication by representation.'" *Strano II*, 649 F. Supp. 3d at 555 (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997)). "The superiority requirement . . . is met if the class action is a better way than individual litigation to adjudicate a claim." *Calloway v. Caraco Pharm. Lab'ys, Ltd.*, 287 F.R.D. 402, 407 (E.D. Mich. 2012) (citing *Daffin v. Ford Motor Co.,* 458 F.3d 549, 554 (6th Cir. 2006)). At this stage, the Court is satisfied that common questions related to PharMerica's relevant conduct, including its cyber security practices and response to the Data Incident, predominate. Class action litigation is therefore superior in light of the size of the proposed class and the relatively small amount in dispute per class member. *See In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2009 WL 5184352 at *6–7 (same).

Accordingly, because it appears "that the court will likely be able to" approve the proposed settlement as "fair, reasonable, and adequate" and "certify the class for purposes of judgment on

the proposal," "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." *See* Fed. R. Civ. P. 23(e)(1)–(2).

### B. Notice to Putative Class Members

"After preliminarily approving a settlement, the court must direct notice of the proposed settlement to all class members who would be bound by the proposal." *Strano II*, 649 F. Supp. 3d at 560 (citing Fed. R. Civ. P. 23(e)(1)(B)). Here, because the putative class is a Rule 23(b)(3) class, "notice must be 'the best notice practicable' and include 'individual notice to all members who can be identified through reasonable effort.'" *Id.* (quoting Fed. R. Civ. P. 23(c)(2)(B)). "To comport with the requirements of due process, notice must be 'reasonably calculated to reach interested parties.'" *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir.2008) (quoting *Karkoukli's, Inc. v. Dohany*, 409 F.3d 279, 283 (6th Cir.2005)). Additionally:

> The notice must clearly and concisely state in plain, easily understood language:
>
> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

According to Plaintiffs, "the proposed notices provide all information required under Rule 23(c)(2)(B)." [DE 146 at 1004]. Specifically,

> [t]he proposed notice program provides for direct mail postcard notice, with skip traces to be conducted and remailing to be attempted for any undeliverable notices returned. The settlement website will be a useful resource for class members—it will post the Claim Form, the long-form notice, and key pleadings in the case, including the attorneys' fee application once it is filed. The Settlement

16

Administrator will also establish a toll-free number for class members to call with questions.

[*Id.*]

After reviewing the notices attached as Exhibits 1-3 to the Settlement Agreement [DE 146-1 at 1051–70], the Court finds that the proposed notices satisfy, taken together, satisfy the requirements of Rule 23(c)(2)(B) and that the Notice Program provides the best notice practicable under the circumstances, for each member of the class. *See In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 151–52 (D.N.J. 2013) (finding notice complied with Rules 23(c)(2)(B) and 23(e)(1) where postcard included the essential information about the settlement and class and postcard was supplemented by a detailed notice that was mailed to those who requested it and published on the settlement website). Accordingly, the Court finds Plaintiffs' proposed Notice Program is reasonable.

## V. CONCLUSION

For all these reasons, and the Court being otherwise sufficiently advised, **IT IS ORDERED** that the Plaintiffs' unopposed motion [DE 146] is **GRANTED.**

1. The Settlement Agreement is **PRELIMINARILY APPROVED**. The proposed settlement class is:

    i.  [A]ll living persons in the United States who were provided notice of the Data Incident.

    ii. Excluded from the Settlement Class are all persons who are directors and officers of Defendant, governmental entities, anyone who validly and timely opts out of the Settlement, and the judge(s) assigned to the Action, the Judge's immediate family, and Court staff.

2. The Court therefore directs the parties to the Settlement Agreement to perform and satisfy the terms and conditions that are triggered by such preliminary approval.

17

3. The Court likewise approves the form and method of notice provided from the Settlement and finds that it complies with the applicable rules and the requirements of Due Process.

4. The Court appoints Kroll Settlement Administration LLC, as Settlement Administrator and orders the Settlement Administrator and the Parties to implement the notice program set forth in the Settlement.

5. A final approval hearing (the "Final Approval Hearing") shall be held before the undersigned at one o'clock, on **May 12, 2026**, at 601 W. Broadway, Louisville, KY 40202, or via video or teleconference, for the purpose of: (a) determining whether the Settlement Class should be finally certified for entry of judgment on the Settlement; (b) determining whether the Settlement Agreement is fair, reasonable, and adequate and should be finally approved; (c) determining whether a Final Approval Order should be entered; and (d) considering Class Counsel's application for an award of attorneys' fees and expenses. The Court may adjourn, continue, and reconvene the Final Approval Hearing pursuant to oral announcement without further notice to the Class, and the Court may consider and grant final approval of the Settlement, with or without minor modification and without further notice to the Class.

6. Members of the Settlement Class shall be afforded an opportunity to request exclusion from the Class. A request for exclusion from the Class must comply with the requirements for form and timing set forth in the Detailed Notice included in the Settlement. Members of the Settlement Class who submit a timely and valid request for exclusion shall not participate in and shall not be bound by the Settlement. Members of the Settlement Class who do not timely and validly opt out of the Class in accordance

with the Detailed Notice shall be bound by all determinations and judgments in the action concerning the Settlement.

7. Class Members who have not excluded themselves shall be afforded an opportunity to object to the terms of the Settlement Agreement. Any objection must comply with the requirements for form and timing set forth in the Detailed Notice included in the Settlement.

8. Any Class Member who does not make his or her objection known in the manner provided in the Detailed Notice shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness or adequacy of the proposed Settlement Agreement.

9. Class Counsel shall file a motion for approval of the attorneys' fees, expenses, and service awards to be paid from the Settlement Fund, along with any supporting materials, on the deadline provided in the Settlement.

10. If the Settlement does not become effective or is rescinded pursuant to the Settlement, the Settlement and all proceedings had in connection therewith shall be without prejudice to the status quo ante rights of the Class Representatives and Defendant, and all Orders issued pursuant to the Settlement shall be vacated.

11. The Court retains jurisdiction to consider all further applications arising out of or connected with the proposed Settlement.

12. The Court orders the following schedule of dates for the specified actions/further proceedings, as set forth in the Settlement Agreement:

| | |
|---|---|
| **Grant of Preliminary Approval** | January 12, 2026 |
| Defendant provides Class List to Settlement Administrator | January 25, 2026 |
| Settlement Administrator commences Notice Program | February 10, 2026 |
| Class Counsel's Motion for Final Approval inclusive of the Application for Attorneys' Fees, Costs, and Service Awards | March 28, 2026 |
| Objection Deadline | April 12, 2026 |
| Opt-Out Deadline | April 12, 2026 |
| Claims Deadline | April 27, 2026 |
| **Final Approval Hearing** | May 12, 2026, at 1:00 PM |

Rebecca Grady Jennings, District Judge
United States District Court

January 12, 2026

Cc: Counsel of record