**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | |
|---|---|
| *In Re: PharMerica Data Breach Litigation*<br><br>This Document Relates To:<br>All Actions | Master File No. 3:23-cv-00297-RGJ |

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, AND FOR ATTORNEYS' FEES, EXPENSES, AND CLASS REPRESENTATIVE SERVICE AWARDS, AND MEMORANDUM OF LAW IN SUPPORT**

Come now the Plaintiffs, David Hibbard, Frank Raney, James Young, Holly Williams, Micaela Molina, and Charley Luther ("Plaintiffs") and respectfully move the Court for final approval of the class action settlement with Defendant, PharMerica Corporation ("PharMerica"),[1] including for an award of attorneys' fees and expenses, as well as for the Class Representative Service Awards, as set forth in the parties' Settlement Agreement ("Settlement"), stating as follows:

## I. INTRODUCTION

On January 12, 2026, this Court preliminarily approved the Settlement[2] between Plaintiffs David Hibbard, Frank Raney, James Young, Holly Williams, Micaela Molina, and Charley Luther ("Plaintiffs"), individually and on behalf of all others similarly situated, and Defendant PharMerica Corporation ("PharMerica" or "Defendant"). Order Granting Preliminary Approval, ECF No. 51. Kroll Settlement Administration has implemented the Court-approved Notice Plan

[1] All capitalized terms herein not separately defined shall have the same meaning ascribed to them in the Settlement Agreement.
[2] The Settlement Agreement ("S.A.") and its exhibits were filed as Exhibit A to Plaintiffs' Memorandum in Support of Plaintiffs' Renewed Unopposed Motion for Preliminary Approval of Class Action Settlement. ECF 86-1.

and direct notice has reached approximately 73.72% of the Settlement Class. *See* **Exhibit 1,** Declaration of Tara Trapani of Kroll Settlement Administration LLC in Connection with Final Approval of Settlement ("Admin Decl."), ¶ 15. The reaction from the Settlement Class has been overwhelmingly positive, which is not surprising given the strengths of the Settlement. Specifically, of the 1.45 million Class Members who received direct notice, ***zero*** have requested exclusion or submitted a formal objection. *Id.*, ¶ 20. The Settlement is an excellent result for the Class, and the Court should grant final approval.

## II. SUMMARY OF LITIGATION

In the interest of brevity and efficiency, Plaintiffs incorporate by reference the summary of litigation provided in their Motion for Preliminary Approval. [DE 146]. Since Preliminary Approval was granted, Court-approved notice of the Settlement has been disseminated and the response from the class has been overwhelmingly positive. Plaintiffs now seek final approval of the Settlement.

## III. THE SETTLEMENT TERMS

The Settlement will provide substantial relief for the Settlement Class (or, "Class"), defined as "all living persons in the United States who were provided notice of the Data Incident." Settlement Agreement (ECF 146-1), ("SA") ¶ 59. Excluded from the Class are [A]ll persons who are directors and officers of Defendant, governmental entities, anyone who validly and timely opts out of the Settlement, and the judge(s) assigned to the Action, the Judge's immediate family, and Court staff. *Id*.

The Class consists of 1,974,766 individuals. Admin Decl. ¶ 15.

### A. Settlement Benefits.

The Settlement Agreement creates two funds: a Settlement Fund and a Claims-Made

Fund.

First, PharMerica shall pay $5,275,000.00 into a non-reversionary fund (the "Settlement Fund"). Following the payment of: (1) all Settlement Administration Costs, (2) PharMerica's past and future costs of data mining to confirm membership in the Settlement Class; (3) any Service Awards awarded to Class Representatives; and (4) attorneys' fees and costs as awarded to Class Counsel, the Settlement Fund will provide Class Members with the ability to claim a cash payment that will be increased or decreased on a *pro rata* basis. [DE 146-1 ¶¶ 65-66, 70(b)].

In addition to the Settlement Fund, PharMerica will pay claims for documented out-of-pocket expenses up to $10,000 per Class Member and one year of Kroll Complete Monitoring on a claims-made basis (the "Claims-Made Fund"). [*Id.* ¶¶ 70-71]. Kroll Complete Monitoring includes credit monitoring, dark web monitoring, pay day loan monitoring, social security scan, fraud consultation, identity theft restoration services (including victim assistance and customer support), $1,000,000 of insurance coverage for fraud and/or identity theft with no deductible, credit score reporting, and real-time inquiry alerts. [*Id.* ¶ 71]. Class Members will have until fifteen (15) days before the initial scheduled Final Approval Hearing to submit a claim. [*Id.* ¶ 55].

Lastly, the Settlement Agreement provides that PharMerica has adopted, paid for, implemented, and will maintain certain "Business Practice Changes" related to information security to safeguard personal information on its systems. [*Id.* ¶ 72.]

**B. Notice and Administration Expenses.**

The cost of sending Notice, and other Administration expenses, has been and will be paid from the Settlement Fund.

### C. Service Awards and Fee Award.

As detailed in the following request for Attorneys' Fees, Costs, and Service Awards, Plaintiffs petition the Court an award of attorneys' fees of "up to $3,481,750.00, which equates to 33% of the Settlement Fund and significantly less than one-third of the value of Cash Payment A – Documented Losses, and Credit Monitoring, made available through the Settlement." [*Id.* at 988]. Only a portion of the award will come from the Settlement Fund. "If approved, $1,740,750.00 shall be payable out of the Settlement Fund and $1,741,000.00 payable directly" by PharMerica. [*Id.*]. The Settlement Agreement also provides for reimbursement of Class Counsel's reasonable costs incurred, as well as service awards of "$3,500" Service Award for each of the named Plaintiffs. [*Id.*].

## IV. THE NOTICE PLAN COMPORTS WITH DUE PROCESS

Before final approval can be granted, Due Process and Rule 23 require that the notice provided to the Settlement Class is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Notice "need only be reasonably calculated . . . to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *UAW v. Gen. Motors Corp.*, 2006 WL 891151, at *33 (E.D. Mich. Mar. 31, 2006) (citation omitted). Notice must clearly state essential information regarding the settlement, including the nature of the action, terms of the settlement, and class members' options. *See* Fed. R. Civ. P. 23(c)(2)(B); *Dick v. Sprint Commc'ns Co. L.P.*, 297 F.R.D. 283, 292 (W.D. Ky. 2014). At its core, "[a]ll that the notice must do is fairly apprise the prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether

the settlement serves their interest." *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 630 (6th Cir. 2007).

Due Process does not require that every class member receive notice, and a notice plan is reasonable if it reaches at least 70% of the class. *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008); Fed. Judicial Ctr., Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide 3 (2010); *see also In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2009 WL 5184352, at *12 (W.D. Ky. Dec. 22, 2009) (finding notice plan to be "the best notice practicable" where combination of mail and publications notice reached 81.8% of the class). The Notice Plan here meets this standard, as it provided direct notice to 73.72% of the Settlement Class. Admin. Decl., ¶ 15.

This Court approved the proposed Notice Plan, finding it met the requirements of Rule 23 and Due Process. ECF No. 87. The Notice Plan has now been fully carried out by the Claims Administrator, Kroll. Pursuant to the Settlement, on January 26, 2026, Kroll received three (3) data files from Defendant's Counsel. Admin. Decl., ¶ 5. The first file contained 656,523 records for Settlement Class Members that included names, physical mailing addresses, and one (1) email address; the second file contained 900,000 records including names, physical mailing addresses, and five (5) email addresses; and the third file contained 527,535 records including names and physical mailing addresses. *Id*. Kroll undertook several steps to reconcile the three lists and compile the eventual Class List for the email and mailing of Notices, including the removal of 109,292 duplicate records, resulting in a final Class List of 1,974,766 unique records for Settlement Class Members. *Id.* Of these, 6,859 records contained neither an email address nor a physical mailing address and were not sent notice). *Id*. Additionally, in an effort to ensure that Postcard Notices would be deliverable to Settlement Class Members, Kroll ran the Class

List through the USPS's National Change of Address ("NCOA") database and updated the Class List with address changes received from the NCOA.

Defendant's Counsel advised Kroll that numerous duplicate addresses were identified within the Class List due to the nature of Defendant's business,[3] necessitating the procurement of updated email addresses or revised physical mailing addresses for purposes of disseminating direct Notice. Admin. Decl., ¶ 6. Of the 1,974,766 unique records for Settlement Class Members, 1,852,151 records contained a physical mailing address that appeared more than once in the Class List following the completion of the NCOA processing. *Id.* At the direction of Class Counsel and Defendant's Counsel, Kroll undertook the following efforts to obtain updated email and/or physical mailing addresses:

(a) On January 28, 2026, Kroll facilitated email appends on a sample of 10,000 records to obtain an email address for the purpose of disseminating Email Notice. *Id.* The email append process yielded fifty-six (56) email addresses for Settlement Class Members;

(b) On February 26, 2026, Kroll received three (3) additional data files from Defendant's Counsel. *Id.* The files contained Social Security numbers for all Settlement Class Members for the purpose of facilitating email and address searches;

(c) On March 3, 2026, Kroll facilitated email and address searches using Social Security numbers on a sample of 244,742 records whose address is shared with 25 or more Settlement Class Members to obtain an email address and/or updated physical mailing address. *Id.* The search process yielded 120,618 reliable email addresses and

[3] As per Defendant's website, PharMerica is a nationwide provider of pharmacy services in over 3,100 long-term care, senior living, IDD/behavioral health, home infusion, specialty pharmacy, and hospital management programs. *See* https://pharmerica.com/who-we-are/.

physical mailing addresses for 111,609 Settlement Class Members; and

(d) On March 10, 2026, Kroll facilitated email and address searches using Social Security numbers on 1,549,503 records whose address is shared with 25 or more Settlement Class Members, which yielded 753,663 reliable email addresses and physical mailing address for 161,013 Settlement Class Members. *Id*.

Kroll disseminated Postcard Notices in multiple waves, as follows:

(a) On February 10, 2026, Kroll caused the mailing of 115,694 Postcard Notices, via first-class mail, to Settlement Class Members who did not share a physical mailing address with another Settlement Class Member.

(b) On March 16, 2026, Kroll caused the mailing of 111,609 Postcard Notices, via first-class mail, to Settlement Class Members for whom only a physical mailing address was obtained from the sample search ran on March 3, 2026, as described above.

(c) On March 23, 2026, Kroll caused the mailing of 161,013 Postcard Notices, via first-class mail, to Settlement Class Members for whom only a physical mailing address was obtained from the search ran on March 10, 2026, as described above.

(d) On March 24, 2026, at the direction of Defendant's Counsel and Class Counsel, and following the searches conducted, Kroll caused the mailing of 201,199 Postcard Notices, via first-class mail, to Settlement Class Members whose record reflected a physical mailing address that occurred fewer than 100 times in the final Class List. *Id*. at ¶ 10.

As of March 26, 2026, 237 Postcard Notices were returned by the USPS with a forwarding address which were automatically re-mailed to the updated addresses provided by the USPS, and 19,339 Postcard Notices were returned by the USPS as undeliverable as addressed, without a

forwarding address. *Id.* at ¶¶ 13-14. Kroll ran those 19,339 undeliverable records through an advanced address search, which produced 11,625 updated addresses, to which Kroll has re-mailed Postcard Notices, none of which have been returned as undeliverable a second time. *Id*. Altogether, as of the date of this filing, following all Postcard Notice re-mailings, Kroll has reason to believe that direct Notices likely reached 1,455,758 of the 1,974,766 Settlement Class Members, which equates to a reach rate of the direct notice of approximately 73.72%.

The Postcard Notice clearly and concisely summarized the litigation here, the Settlement, and the legal rights of Settlement Class Members. The Postcard Notice also directed Settlement Class Members to the Settlement Website, where they are able to submit a change of address, access important court filings, and review updated deadlines and answers to frequently asked questions. As of March 27, 2026, there have been 7,864 unique visitor sessions to the Settlement website. *Id*., ¶ 7.

Kroll also established a toll-free telephone number, which allows callers to hear an introductory message and have the option to learn more about the Settlement in the form of recorded answers to FAQs, and to request that a Claim Form be mailed to them.

As a result of this comprehensive notice program, as of March 27, 2026, Kroll has received 2,039 claim forms, with Class Members having until April 27, 2026 to submit a claim *Id*., ¶¶ 16-17. Class Members have until April 13, 2026 to opt-out of or object to the Settlement. *Id*., ¶ 19. As of March 27, 2026, zero class members have requested to opt-out and zero have objected to the Settlement. *Id*. ¶ 20. Given the broad reach of the Notice, and the comprehensive information provided, the requirements of Due Process and Rule 23 are met.

## V. THE SETTLEMENT CLASS MEETS THE REQUIREMENTS OF RULE 23 AND SHOULD BE CERTIFIED

### A. Rule 23(a) Requirements Are Met for Settlement Purposes

***Numerosity and Ascertainability.*** The first prerequisite is that the "class is so numerous that joinder of all members is impracticable." Rule 23(a)(1). "In most cases, a class in excess of forty members will do." *Curry v. SBC Commc'ns, Inc.*, 250 F.R.D 301, 310 (E.D. Mich. 2008). The Settlement Class includes approximately 1.97 million individuals, *see supra*, satisfying the numerosity requirement for purposes of settlement. The Class is also ascertainable, as PharMerica knows the identity of each of these Class Members. *See Kinder v. Nw. Bank*, 278 F.R.D. 176, 182 (W.D. Mich. 2011) (class must be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member").

***Commonality.*** Rule 23(a)(2) is satisfied when questions of law or fact are common to the class, the resolution of which will bring a class-wide resolution. Fed. R. Civ. P. 23(a)(2). It may be indicated when the claims all "depend upon a common contention," with a single common question sufficing. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). The common contention must be capable of class-wide resolution and the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Here, Plaintiffs' claims turn on the adequacy of PharMerica's data security measures. Evidence to resolve that claim does not vary among Class Members, and so can be fairly resolved, for purposes of settlement, for the entire Class at once.

***Typicality.*** A class representative's claims must be typical of those of other class members. Fed. R. Civ. P. 23(a)(3). Plaintiffs satisfy the typicality requirement where their "claim arises from the same event or practice or course of conduct that gives rise to the claims of other

class members, and if his or her claims are based on the same legal theory." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007). Typicality assesses "whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998). The claims need not be identical; rather, they need only "arise from the same course of conduct." *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997). The "court must inquire whether the interests of the named plaintiff are aligned with those of the represented group, such that in pursuing his own claims, the named plaintiff will also advance the interests of the class members.'" *Garner Properties & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 623 (E.D. Mich. 2020). Plaintiffs allege that each Settlement Class Member had their Private Information compromised as a result of the Data Incident and were thus impacted by the same allegedly inadequate data security that Plaintiffs allege harmed the rest of the Class. Thus, Plaintiffs' pursuit of their own claims necessarily advances the interests of the Class, satisfying the typicality requirement.

***Adequacy.*** Class representatives must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). "Class representatives are adequate when it appears that they will vigorously prosecute the interest of the class through qualified counsel . . . which usually will be the case if the representatives are part of the class and possess the same interest and suffer the same injury as the class members." *UAW*, 497 F.3d at 626. The preliminarily-approved Class Representatives have no conflict, have participated actively, and are represented by attorneys experienced in class actions, including data breach cases. Class Counsel regularly engages in consumer privacy cases, have the resources necessary to prosecute this case, and have frequently been appointed lead class counsel in data breach cases and other class actions. Class

Counsel have devoted substantial resources to this action: investigating Plaintiffs' claims; obtaining and analyzing Plaintiffs' detailed personal records; analyzing the scope of the Data Incident and PharMerica's privacy policies, remedial steps, and financial condition; participating in mediation; and, ultimately, negotiating a Settlement that provides meaningful relief for the Class in the face of substantial litigation risks. Class Counsel have vigorously prosecuted this case and will work diligently on behalf of the Class throughout the administration process.

**B. Rule 23(b) Requirements Are Met for Purposes of Settlement**

After satisfying Rule 23(a), a plaintiff must also satisfy one of the three requirements of Rule 23(b) for a court to certify a class. Fed. R. Civ. P. 23(b); *Merenda v. VHS of Michigan, Inc.*, 296 F.R.D. 528, 536 (E.D. Mich. 2013). Plaintiffs seek certification under Rule 23(b)(3), which requires that (i) common questions of law and fact predominate over individualized ones, and that (ii) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). "A plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *Beattie*, 511 F.3d at 564. This requirement considers "the difficulties likely to be encountered in the management of a class action" and issues with individual litigation. *Id.*; *see also Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) ("[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action[.]"). The proposed Class satisfies the above.

**1. *Common Questions of Law and Fact Predominate***

Predominance focuses on whether the defendant's alleged liability is common enough to warrant class-wide adjudication. *Amchem*, 521 U.S. at 623. The proposed class must be

"sufficiently cohesive to warrant adjudication by representation." *Id.* Though similar to the commonality requirement of Rule 23(a), Rule 23(b)(3) "contains the more stringent requirement that common issues predominate over individual issues." *Machesney v. Lar-Bev of Howell, Inc.*, 317 F.R.D. 47, 61 (E.D. Mich. 2016). Predominance is met if a single factual or legal question is "at the heart of the litigation." *See Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). Data breach cases present questions of law and fact central to liability that predominate over any individual issues. PharMerica's alleged course of conduct was uniform across the Class, so the claims "will prevail or fail in unison." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 859 (6th Cir. 2013). Since class-wide determination of this issue will be the same for all, predominance is satisfied.

**2. *A Class Action Is the Superior Method of Adjudication***

Certification of this suit as a class action is superior to other methods to fairly, adequately, and efficiently resolve the claims here. "The superiority requirement of Rule 23(b)(3) is met if the class action is a better way than individual litigation to adjudicate a claim." *Calloway v. Caraco Pharm. Labs., Ltd.*, 287 F.R.D. 402, 407- 08 (E.D. Mich. 2012). Such is especially true in situations which "vindicat[e] the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Amchem*, 521 U.S. at 617. Adjudicating individual actions here is impracticable; the amount in dispute per person is too small given the complexity of the issues, and costs for document review, technical issues, and experts. Individual damages are insufficient to allow such actions—at least not with the aid of adequate counsel. Such prosecution would delay resolution, and may lead to inconsistent rulings.[4] Thus, the Court should certify the Class pursuant to Rule 23(b)(3). PharMerica does not

[4] The Court need not consider trial manageability. *Amchem*, 521 U.S. at 620 ("with a request for

oppose class certification for settlement purposes only.

## VI. THE SETTLEMENT SHOULD BE FINALLY APPROVED

The Federal Rules of Civil Procedure require judicial approval of class action settlements. *Halliday v. Weltman, Weinber & Reis Co., L.P.A.*, 2013 WL 692856, at *1 (E.D. Mich. Feb. 26, 2013) (citing Fed. R. Civ. P. 23(e)). At final approval, the ultimate issue is whether the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983). Courts within the Sixth Circuit recognize a strong "federal policy favoring settlement of class actions." *UAW*, 497 F.3d at 632 (citation omitted); *see also Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 830 (E.D. Mich. 2008).

Rule 23(e)(2) provides factors for the Court to determine if a settlement is "fair, reasonable, and adequate." The Rule 23(e)(2) factors are: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed attorney's fee, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(2); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

In addition to these factors, the Sixth Circuit has laid out its own factors: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5)

---

settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems").

the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *UAW*, 497 F.3d at 631. As described below, each factor affirms the fairness, reasonableness, and adequacy of the Settlement, and supports final approval.

### A. Rule 23(e)(2) Factors Weigh in Favor of Final Approval

The Settlement easily satisfies the Rule 23(e)(2) factors. First, as explained, Plaintiffs and Class Counsel have adequately represented the Class and secured an excellent result. *See above.* Second, the Settlement was negotiated at arm's-length through a mediation session with highly qualified mediator, Steven R. Jaffe, of Upchurch Watson White & Max, taking place after which the Parties had exchanged information sufficient to adequately assess the strengths and weaknesses of the case. Third, the relief provided is clearly adequate when taking into account the factors listed in Rule 23. The Settlement provides a substantial recovery for the Settlement Class and does so without additional delay and the uncertainty of litigation. *Id.*, § III. Fourth, all Settlement Class Members are treated equally. Each Settlement Class Member has the opportunity to make a claim for one of the following: (1) reimbursement for documented losses; or (2) an alternative cash payment; as well as (3) one year of Kroll credit monitoring on a claims-made basis. Accordingly, all Settlement Class Members are treated equitably and have the same opportunity to participate in the Settlement.

### B. The Sixth Circuit's *UAW* Factors Weigh in Favor of Final Approval.

#### 1. *There Is No Risk of Fraud or Collusion (UAW Factor 1)*

The first *UAW* factor is "the risk of fraud or collusion." *UAW*, 497 F.3d at 631. "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Leonhardt*, 581 F. Supp. 2d at 838. Where, as here, a settlement was reached through arm's-length negotiations through an experienced mediator, there is no evidence of

fraud or collusion. *See, e.g.*, *Sheick v. Auto. Component Carrier, LLC*, 2010 WL 3070130, at *13 (E.D. Mich. Aug. 2, 2010) ("[N]egotiations of the Settlement Agreement were conducted at arm's-length by adversarial parties and experienced counsel, which itself is indicative of fairness, reasonableness, and adequacy."). Here, the Settlement was only obtained following a mediation that was conducted at arm's-length after informal discovery. This factor strongly supports approval.

### 2. *Litigation Through Trial Would be Complex, Costly, and Long (UAW Factor 2)*

The second *UAW* factor is "the complexity, expense and likely duration of the litigation." *UAW*, 497 F.3d at 631. Most class actions are inherently risky, and thus "[t]he obvious costs and uncertainty of such lengthy and complex litigation weigh in favor of settlement." *UAW*, 2006 WL 891151 at *17. This case is no exception. As discussed above, the Parties have engaged in informal discovery, and a mediation. Undoubtedly, further litigation would create numerous risks that a litigation class could not be certified and/or that the Settlement Class would not recover anything at all. PharMerica has indicated that it would continue to assert numerous defenses on the merits. Class Counsel also believes that PharMerica would oppose class certification vigorously, and that it would prepare a competent defense at trial. Looking beyond trial, PharMerica could appeal the merits of any adverse decision, including any class certification under Rule 23(f).

The Settlement, on the other hand, permits a prompt resolution of this action on terms that are fair, reasonable, and adequate to the Class. This result has been accomplished years earlier than if the case proceeded to judgment through trial and/or appeal(s) and provides certainty whereas litigation does not and could result in defeat for the Class on a motion for class certification, at summary judgment, at trial, or on appeal. Consequently, this *UAW* factor plainly

weighs in favor of final approval of the Settlement.

#### 3. *Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (UAW Factor 3)*

The third *UAW* Factor is "the amount of discovery engaged in by the parties." *UAW*, 497 F.3d at 631. Here, the Parties exchanged information that would have contained the same information produced in formal discovery related to the issues of class certification and summary judgment; and thus, the Parties had sufficient information to assess the strengths and weaknesses of the claims and defenses. Class Counsel's experiences in similar matters, as well as the efforts made by counsel on both sides, confirm that they are sufficiently well apprised of the facts of this action and their respective cases in order to make an intelligent analysis of the Settlement.

#### 4. *Plaintiffs Face Real Risks if the Case Proceeded (UAW Factor 4)*

The fourth *UAW* factor is "the likelihood of success on the merits." *UAW*, 497 F.3d at 631. Success at trial is not certain here. PharMerica already filed a motion to dismiss, which the Court granted in part and denied in part. Should litigation continue they would contest class certification and move for summary judgment on various issues. There would be a risk of maintaining class status through trial. At the time of Settlement, the Court had not yet certified a class, and the Parties anticipate that such a determination would only be reached after lengthy discovery and exhaustive class certification briefing—likely years down the line.

Even if the Court did certify a Rule 23 class, PharMerica would likely challenge certification through a Rule 23(f) application and subsequently move to decertify, forcing additional rounds of briefing. Risk, expense, and delay permeate such a process. In Class Counsel's experience, these additional steps in litigation can take years to resolve. The proposed Settlement eliminates this risk, expense, and delay and awards Class Members payment promptly. This factor favors final approval.

**5. *Class Counsel and Class Representatives Support the Settlement (UAW Factor 5)***

The fifth *UAW* factor is "the opinions of class counsel and class representatives." *UAW*, 497 F.3d at 631. "The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement." *UAW*, 2008 WL 4104329, at *18. Here, both Class Counsel and Plaintiffs support the Settlement. They do so, because, as explained, this Settlement is an excellent result for Class Members in light of defenses likely to be raised by PharMerica. This *UAW* factor therefore also favors final approval.

**6. *The Reaction of Absent Class Members Is Uniformly Positive (UAW Factor 6)***

The sixth *UAW* factor is "the reaction of absent class members." *UAW*, 497 F.3d at 631. In most class settlements, a small number of opt-outs and objections "are to be expected" and do not impact a settlement's fairness. *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003); *see also Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008) (inferring that most "class members had no qualms" with settlement where 79 out of 11,000 class members objected). But here, no Class Members have requested exclusion, and no Class Member has filed a formal objection. Admin. Decl., ¶ 20. This *UAW* factor therefore plainly weighs in favor of final approval. *See, e.g.*, *Hanlon v. Chrysler*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."); *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *4 (E.D.N.Y. Nov. 20, 2012) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication of fairness."). It is also noteworthy that none of the attorneys general and other governmental officials who received notification of the settlement pursuant to the Class Action Fairness Act have filed objections. *See*

*George v. Acad. Mortg. Corp.*, 369 F. Supp. 3d 1356, 1373 (N.D. Ga. 2019) ("Not one CAFA notice recipient objected to the settlement, which also weighs in favor of its approval here.") (citing *Hall v. Bank of Am., N.A.*, 2014 WL 7184039, at *5 (S.D. Fla. Dec. 17, 2014)).

Moreover, given the vast size of the Class here, the fact that zero Class Members have requested exclusion is an indication of the settlement's fairness. *IUE- CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 600 (E.D. Mich. 2006) (collecting cases). *See also In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001) ("The vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement."). The settlement should be approved, notwithstanding any concerns unrelated to the Settlement.

**7. *The Settlement Serves the Public Interest (UAW Factor 7)***

The seventh and final *UAW* factor is the "public interest." *UAW*, 497 F.3d at 631. "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *In re Cardizem*, 218 F.R.D. at 530. Further, when individual class members seek a relatively small amount of statutory damages, "economic reality dictates that [their] suit proceed as a class action or not at all." *Eisen*, 417 U.S. at 161. Society undoubtedly has a strong interest in incentivizing attorneys to bring complex litigation that is necessary to protect the privacy of individuals' most personal information. In fact, class action litigation in this area is the most realistic means of obtaining recovery on behalf of the entire Class. This factor therefore supports final approval.

## VII. SETTLEMENT CLASS COUNSEL SHOULD RECEIVE FINAL APPOINTMENT

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must

fairly and adequately represent the interest of the class." Rule 23(g)(1)(B). In making this determination, courts generally consider the following factors: (1) proposed class counsel's work in identifying or investigating potential claims; (2) proposed counsel's experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) proposed class counsel's knowledge of the applicable law; and (4) proposed counsel's resources committed to representing the class. Rule 23(g)(1)(A)(i-iv). *See supra* § IV(A); *see also* 4 Newberg and Rubenstein on Class Actions § 13:48 (6th ed.)

As affirmed in this Court's Preliminary Approval Order, J. Gerard Stranch, IV of Stranch, Jennings, & Garvey, PLLC, E. Michelle Drake of Berger Montague, P.C., Gary M. Klinger of Milberg, PLLC, Lynn A. Toops of CohenMalad, LLP, and Augustus Herbert of Gary Ice Higdon have extensive experience in prosecuting data breach class actions and other complex class actions. Settlement Class Counsel and Settlement Class Counsel have diligently investigated and prosecuted this case by dedicating substantial resources to it and successfully negotiating this Settlement. *See* S.A. generally. Thus, the Court should finally appoint J. Gerard Stranch, IV of Stranch, Jennings, & Garvey, PLLC, E. Michelle Drake of Berger Montague, P.C., Gary M. Klinger of Milberg, PLLC, Lynn A. Toops of CohenMalad, LLP, and Augustus Herbert of Gary Ice Higdon as Settlement Class Counsel.

## VIII. THE COURT SHOULD GRANT PLAINTIFFS' REQUESTS FOR ATTORNEYS' FEES, EXPENSES, AND CLASS REPRESENTATIVE SERVICE AWARDS

In addition, the Court should grant Class Counsels' request for attorneys' fees and expenses, as well as the request for Class Representative Service Awards.

First, Plaintiffs move for attorneys' fees and expenses as contemplated in the Settlement. As stated in the motion for preliminary approval, under the terms of Settlement, Defendant will not oppose Plaintiff's motion for fees and expenses. SA ¶ 105. In accordance with this, Class

Counsel applies for an award of attorneys' fees of 33% of the Settlement Fund, or $3,481,750.00, which is significantly less than one-third of the value of Cash Payment A – Documented Losses, and Credit Monitoring, made available through the Settlement. If approved, $1,740,750.00 shall be payable out of the Settlement Fund and $1,741,000.00 payable directly from the Defendant, separate and apart from other benefits made available to the Settlement Class. Class Counsel shall also be entitled to seek reimbursement out of the Settlement Fund for reasonable costs incurred.

In addition, Class Counsel moves for service awards to each of the Class Representatives of $3,500 each, or $21,000.00 total. *Id.* ¶ 104. Payment for Class Representatives' Service Awards will be distributed from the Settlement Fund. *Id.*

**A. The Court should approve attorneys' fees of thirty-three percent (33%) of the common fund because that amount is reasonable and in line with the standard fee awarded in contingent class action litigation.**

The Court should approve attorneys' fees and expenses to Class Counsel in the amount of 33% of the Settlement Fund The percentage-of-the-fund method is the most appropriate and efficient way of awarding fees when a common fund is recovered, and the standard one-third market rate is appropriate here—and indeed less here. *See In re Amazon.com, Inc., Fulfillment Ctr. Fair Lab. Standards Act & Wage & Hour Litig.,* No. 3:14-CV-204-DJH, 2024 WL 3361639, at *3 (W.D. Ky. July 10, 2024) ("The percentage method is generally preferred in common-fund cases.") (citations omitted). *See also In re CorrectCare Data Breach Litig.,* No. CV 5:22-319-DCR, 2024 WL 4211480, at *4 (E.D. Ky. Sept. 17, 2024)

Federal Rule of Civil Procedure 23(h) provides that "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or the parties' agreement." As the Supreme Court has observed, "lawyer[s] who recover[ ] a common fund…[are] entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444

U.S. 472, 478 (1980). "When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Rawlings v. Prudential-Bache Props., Inc.,* 9 F.3d 513, 516 (6th Cir. 1993) (citation omitted). A district court has discretion to use either the percentage of the fund method or the lodestar method to calculate attorneys' fees. *Id.*; *see also In re CorrectCare Data Breach Litig.,* No. CV 5:22-319-DCR, 2024 WL 4211480, at *4 (E.D. Ky. Sept. 17, 2024). If a fee award is reasonable under one of these two methods, it is within the court's discretion, and the court is not required to "crosscheck" with the other method. *Gashko v. Global Fitness Holdings, LLC*, 822 F.3d 269, 282–83 (6th Cir. 2016). The "trend" has been towards using the percentage of the fund method in awarding attorneys' fees. *Rawlings*, 9 F.3d at 515. "[T]he percentage of the fund method [for awarding fees] more accurately reflects the results achieved." *Id.* at 516. It has "a number of advantages: it is easy to calculate; it establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery; and it encourages early settlement, which avoids protracted litigation." *Id*. By contrast, "the lodestar method has been criticized for being too time-consuming of scarce judicial resources." *Id*. (citing *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269–70 (D.C. Cir. 1993);Court Awarded Attorneys' Fees, Report of the Third Circuit Task Force, 108 F.R.D. 237, 250 (1985)). Under the lodestar method, "[d]istrict courts must pore over time sheets, arrive at a reasonable hourly rate, and consider numerous factors in deciding whether to award a multiplier." *Id*. "With the emphasis it places on the number of hours expended by counsel rather than the results obtained, it also provides incentives for overbilling and the avoidance of early settlement." *Id.*

In the Sixth Circuit, six factors govern the reasonableness of class action fees:

> (1) the value of the benefit rendered to the plaintiff class [ ]; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a

> contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

*Ware v. CKF Enters., Inc.,* No. 5:19-183-DCR, 2020 WL 2441415, at *15–16 (E.D. Ky. May 12, 2020) (Reeves, C.J.) (quoting Bowling v. Pfizer, Inc., 102 F.3d 777 (6th Cir. 1996)); *In re CorrectCare Data Breach Litig.* 2024 WL 4211480, at *4, citing *Rawlings*, 9 F.3d at 516. "[…[T]he Court need not evaluate each factor in every case—particularly the value of the services on an hourly basis because time records are not being submitted." *In re CorrectCare Data Breach Litig.,* at *4. "Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery." *Shaw v. Toshiba Am. Info. Sys., Inc.,* 91 F. Supp. 2d 942, 972 (E.D. Tex. 2000). "[C]ourts within this circuit have found one-third common fund attorney's fee awards to be reasonable" in complex litigation. *Ware*, 2020 WL 2441415, at *16; see also *Hebert v. Chesapeake Operating, Inc.,* No. 2:17-CV-852, 2019 WL 4574509, at *8 (S.D. Ohio Sept. 20, 2019) ("33% is typical for attorney's fees in common fund" cases). In data breach cases in particular, courts have found that an award of one third of the common fund "is customary and typical of like awards." *See In re CorrectCare Data Breach Litig.* (approving one-third attorneys' fees request in data breach class action); *In re Wright & Fillippis, LLC Data Security Breach Litig.,* 2024 WL 3083437 (E.D. Mich. Jun 20, 2024) (same); *All. Ophthalmology, PLLC v. ECL Grp., LLC,* No. 1:22-CV-296, 2024 WL 3203226, at *15 (M.D.N.C. June 27, 2024) (one third fee in data breach settlement) (citing *Lamie v. LendingTree, LLC*, No. 22-CV-307, 2024 WL811519, at *2 (W.D.N.C. Feb. 27, 2024) (same); *Thomsen v. Morely Cos.,* No. 22-CV-10271, 2023 WL 3437802, at *2 (E.D. Mich. May 12, 2023) (awarding 33% and finding that amount to be "presumptively reasonable"); *In re Forefront Data Breach Litig.,* No. 21-CV-887, 2023 WL 6215366, at *8 (E.D. Wis. Mar. 22, 2023) (overruling

objector and awarding fee of one-third of gross settlement fund and 41% of net settlement fund); *In re Novant Health, Inc.,* No. 1:22-CV-697, 2024 WL 3028443, at *9 (M.D.N.C. June 17, 2024) (awarding class counsel fees of one-third of $6.6 million common fund in data privacy settlement); *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 941 (N.D. Ill. 2022) (approving one-third fee of over $29 million and noting that amount "is typical in other data privacy settlements"), appeal dismissed sub nom. *In re Tiktok Inc., Consumer Priv. Litig.,* No. 22-2682, 2022 WL 19079999 (7th Cir. Oct. 12, 2022).

The requested attorneys' fees of thirty-three percent (33%) are appropriate here. First, the value of the benefit to the Class members is significant, including both (1) a $5,275,000.00 non-reversionary common fund and (2) a separate claims-made benefit fund. With respect to the common fund—following the payment of all Settlement Administration Costs, Defendant's past and future costs of data mining to confirm membership in the Settlement Class, any Service Awards awarded to Class Representatives, attorneys' fees and costs as awarded to Class Counsel—the Settlement Fund will provide Class Members with the ability to claim a cash payment that will be increased or decreased on *a pro rata* basis. Settlement Agreement, ¶¶ 65-66, 70(b). Next, from the claims made portion ("Claims-Made Fund"), PharMerica will pay claims for documented out-of-pocket expenses up to $10,000 per Class Member and one year of Kroll Complete Monitoring on a claims-made basis. *Id*. ¶¶ 70-71. Kroll Complete Monitoring includes credit monitoring, dark web monitoring, pay day loan monitoring, social security scan, fraud consultation, identity theft restoration services (including victim assistance and customer support), $1,000,000 of insurance coverage for fraud and/or identity theft with no deductible, credit score reporting, and real-time inquiry alerts. *Id.* ¶ 71. Class Members will have until fifteen (15) days before the initial scheduled Final Approval Hearing to submit a claim. *Id.* ¶ 55. Further still, the Settlement includes Defendant

effectuating "Business Practice Changes" related to information security to safeguard personal information on its systems. *Id*. ¶ 72. It is estimated that the value of these Business Practice Changes is $2,542,000.00 annually. *Id*.

It is unlikely that many of the class members would have pursued claims individually. Accordingly, without class counsel's efforts, the vast majority of class members would not have been compensated for the breach. In light of this, the benefits provided by the Settlement to the Settlement Class members are certainly significant. *See In re CorrectCare Data Breach Litig*., 2024 WL 4211480, at *4 (E.D. Ky. Sept. 17, 2024)

Second, Class Counsel took this litigation on a purely contingent fee basis, meaning they risked never recovering any fee for their time unless the litigation was successful. *See* e.g., *Fulton-Green v. Accolade, Inc.,* No. CV 18-274, 2019 WL 4677954, at *13 (E.D. Pa. Sept. 24, 2019) ("Class Counsel invested considerable resources into this case with no guarantee that they would recover those costs given that they were retained on a contingency fee basis. This factor again weighs in favor of determining that the fee is reasonable."). *In re CorrectCare Data Breach Litig*., 2024 WL 4211480, at *4 ("Class counsel took the case on a contingent basis, investing significant time and effort at the risk of recovering nothing."). This factor supports the Court granting the requested attorneys' fees of 33% of the common fund.

Third, society has a stake in rewarding attorneys who produce benefits in data breach cases because such suits serve not only to compensate victims but also to deter allegedly lax data security practices by other entities and to encourage entities to spend adequately on data security. "Accordingly, society has a significant interest in rewarding attorneys who prosecute these cases." *Id*. at *4.

Fourth, "courts have acknowledged that data breach cases are particularly complex." *Id*.

citing *In re Tik Tok, Inc. Consumer Privacy Litig.,* 617 F. Supp. 3d 904, 941 (N.D. Ill. 2022); *Gordon v. Chipotle Mexican Grill, Inc.,* 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019); *Beasley v. TTEC Servs. Corp*., No. 22-CV-00097-PAB-STV, 2024 WL 710411, at *5 (D. Colo. Feb. 21, 2024) (quoting *Gordon* (collecting cases)); *see also In re the Home Depot, Inc., Customer Data Sec. Breach Litig.,* No. 1:14-md-02583-TWT, 2016 WL 6902351, at *5 (N.D. Ga. Aug. 23, 2016) (collecting cases)).

Further, counsel on both sides of this case are highly skilled in class actions, in general, and data breach class action, in particular. See ECF No. 31 (appointing Class Counsel as Interim Lead Counsel, concluding that they "…possess considerable experience in litigating class actions, and particularly those involving data breaches…" including in Kentucky.)

Finally, while the period for objections still remains open, Class Counsel has thus far received no objections to the requested 33% fee. This lends support to the reasonableness of the fee. *Stechert v. Travelers Home & Marine Ins. Co.,* No. 17-cv-0784-KSM, 2022 WL 2304306, at *12 (E.D. Pa. June 27, 2022) ("No one has objected to any part of the Settlement, including to the $1,210,000 carveout for attorneys' fees. The lack of objection from the Settlement Class weighs in favor of approval.").

**B. The Court should approve reimbursement of reasonable litigation expenses**

In addition to fees, "[u]nder the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and settlement, including expenses incurred in connection with document production, consulting with experts and consultants, travel and other litigation-related expenses." *New England Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.,* 234 F.R.D. 627, 634–35 (W.D. Ky. 2006), *aff'd sub nom. Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) (internal quotation omitted).

Courts recognize that when Class Counsel prosecutes a case on a contingent basis "without guarantee of reimbursement," they "ha[ve] a strong incentive to keep costs to a reasonable level." Tussey v. ABB, Inc., No. 06-CV-04305-NKL, 2019 WL 3859763, at *5 (W.D. Mo. Aug. 16, 2019) (citing In re Marsh ERISA Litig., 265 F.R.D. 128, 150 (S.D.N.Y. 2010) (recognizing that counsel with contingent fee agreement has a "strong incentive to keep expenses at a reasonable level")). In Kentucky federal court, reimbursement of expenses is well-accepted. *In re CorrectCare Data Breach Litig.,* 2024 WL 4211480, at *5.

Here, the requested reimbursement of $85,910 in expenses is reasonable. The expenses are all normal costs of litigation, such as the cost of paying for the mediation with Mr. Jaffe, court filing fees and *pro hac vice* fees, Westlaw charges, and—uniquely here—for $69,160.00 for the costs of death master file certification inquiries. Because Class Counsel advanced the expenses on a contingent basis with no guarantee of recovery, they were incentivized only to incur expenses necessary to prosecute the litigation successfully. The Court should therefore approve the requested reimbursement of expenses. See *Sweda v. Univ. of Pa.,* No. 16-cv-4329, 2021 WL 5907947, at *7 (E.D. Pa. Dec. 14, 2021) ("Attorneys who create a common fund for the benefit of a class are entitled to reimbursement of reasonable litigation expenses from the fund.") (quoting In re Aetna Inc., No. MDL-1219, 2001 WL 20928, at *13 (E.D. Pa. Jan. 4, 2001)).

**C. The Court should approve service awards of $3,500 to each of the Class Representatives**

In addition to Class Counsel's requested attorneys' fees and expenses, the Court should approve modest service awards of $3,500 to each of the Class Representatives, totaling $21,000.00. As stated in the Motion for Preliminary Approval, the Settlement Agreement provides that each Class Representative shall request a $3,500 Service Award for their service to the Class, which Class Counsel now request. SA ¶ 104. Payment for Class Representatives' Service Awards

will be distributed from the Settlement Fund. *Id*. Under applicable law, the Court should approve these incentive awards.

"[C]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Ross v. Jack Rabbit Servs., LLC*, No. 3:14-cv-44- DJH, 2016 WL 7320890, at *5 (W.D. Ky. Dec. 15, 2016) (internal quotations omitted). Such awards "encourage individuals to undertake the responsibilities and risks of representing the class and recognize the time and effort spent in the case." *In re Anthem Data Breach Litig*., No. 15-MD-02617-LHK, 2018 WL 3960068, at *30 (N.D. Cal. Aug. 17, 2018).

In determining whether to approve such awards, courts within the Sixth Circuit consider:

> (1) the action taken by the Class Representatives to protect the interests of the Class Members and others and whether these actions resulted in a substantial benefit to Class Members; (2) whether the Class Representatives assumed substantial direct and indirect financial risk; and (3) the amount of time and effort spent by the Class Representatives in pursuing the litigation.

*In re CorrectCare Data Breach Litig.,* 2024 WL 4211480, at *5 quoting *Ross,* 2016 WL 7320890, at *5.

As to amount, many courts find that $5,000 to $10,000 is a typical or presumptive amount. *See In re CorrectCare Data Breach Litig.,* 2024 WL 4211480, at *5 (approving service awards of $2,500 for each of the give (5) plaintiffs); *In re Novant Health, Inc.,* 2024 WL 3028443, at *13 (M.D.N.C. June 17, 2024) (concluding that a $2,500 service award for each of the 10 named plaintiffs in a data breach case was fair and reasonable); *In re Anthem*, 2018 WL 3960068, at *31 (noting the "benchmark" presumptively reasonable service award in the Ninth Circuit is $5,000); *Caligiuri v. Symantec Corp*., 855 F.3d 860, 867 (8th Cir. 2017) ("courts in [the Eighth] [C]ircuit regularly grant service awards of $10,000 or greater"). "The most recent empirical study on

incentive awards reviewed approximately 1,200 class actions from 2006 to 2011 and found that the median incentive award per named plaintiff was $5,250 (or $7,125 in 2023 dollars)." *Scott v. Dart*, 99 F.4th 1076, 1087 (7th Cir. 2024) (citation omitted).

Here, the requested service awards of $3,500 to each of the six (6) Plaintiffs are relatively modest and are supported by the relevant factors. First, without the Class Representatives' willingness to reach out to counsel, provide relevant information, review the complaint, and approve the settlement, there would be no class action recovery at all. Second, the recovery obtained is *substantial*, as discussed above, resulting in cash payments and other benefits to over 1 million absent Class members who did not step forward to pursue the litigation. Third, by putting their names on a class action in federal court, the Class Representatives necessarily exposed themselves to the reputational risk that thousands of people may one day know their names and that their data was breached, as well as the potential stigma of being flagged as "litigious" during background or employment searches. Now that the litigation has succeeded in providing a substantial multi-million dollar benefit to the Class members, the Class Representatives' role in that achievement should be recognized with a modest $3,500 service award. This amount is consistent with what has been approved in other data breach settlements. *See*, e.g., *In re CorrectCare Data Breach Litig.,* 2024 WL 4211480, at *5 (approving service awards of $2,500 for each of the give (5) plaintiffs); *Perdue v. Hy-Vee, Inc.,* 550 F. Supp. 3d 572, 578 (C.D. Ill. 2021) ($2,000 service awards for each plaintiff in case that settled prior to plaintiff depositions); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.,* No. 16-md-02752-LHK, 2020 WL 4212811, at *43 (N.D. Cal. July 22, 2020), aff'd, No. 20-16633, 2022 WL 2304236 (9th Cir. June 27, 2022) (approving "$2,500 for the five Settlement Class Representatives who participated in the instant case without being deposed"); *Chipotle*, 2019 WL 6972701, at *2 ($2,500 service awards for each

of six plaintiffs in case that settled prior to depositions).

## IX. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion for Final Approval of Class Action Settlement, including their request for attorneys' fees, expenses, and Class Representative Service Awards, and enter Final Judgment in the form submitted herewith.

Dated: March 27, 2026

Respectfully submitted,

*/s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV (*Pro Hac Vice*)
**STRANCH, JENNINGS & GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Tel.: 615-254-8801
Fax: 615-255-5419
gstranch@stranchlaw.com

***Interim Lead Counsel***

E. Michelle Drake (*Pro Hac Vice*)
**BERGER MONTAGUE, PC**
43 SE Main Street, Suite 505
Minneapolis, Minnesota 55414
Tel.: 612-594-5999
Fax: 612-584-4470
emdrake@bm.net

Gary Klinger (*Pro Hac Vice*)
**MILBERG, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Tel.: (866) 252-0878
gklinger@milberg.com

Lynn A. Toops (*Pro Hac Vice*)
**COHEN & MALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
Tel: (317) 636-6481

Fax: (317) 636-2539
ltoops@cohenandmalad.com

***Co-Members of Plaintiffs' Executive Committee***

Augustus Herbert
**GRAY ICE HIGDON, PLLC**
3939 Shelbyville Road, Suite 201
Louisville, Kentucky 40207
Direct: 502.625.2732
Fax: 502.561.0442
aherbert@grayice.com

***Liaison Counsel***

***Counsel for Plaintiffs and the Proposed Class***

**CERTIFICATE OF SERVICE**

It is hereby certified that on March 27, 2026, a true and accurate copy of the foregoing was filed with the Clerk of the Court via the Court's CM/ECF system, which will then send electronic notification of such filing to all counsel of record.

*/s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV (*Pro Hac Vice*)
*Interim Lead Counsel*